Parsons, C. J.
It appears from the record sent from the Common Pleas that the plaintiffs in error were original defendants in a pauper cause, in which they were prosecuted by the defend-[*279] ants in error, to obtain a removal, from Harwich *to Brewster, of Mehitabel, the wife of Stephen Snow, and of Abigail and Clarissa, his two daughters, and to recover the damages occasioned to Harwich by their maintenance. The record contains the judgment for the defendants in error, and the reasons of the judgment, but not the facts on which the judgment was founded. To prevent the delay of sending the cause back to have the facts stated, they have been agreed by the counsel for the parties.
The substantial parts of the facts are, that the northerly part of Harwich was incorporated, and made a town, by the name of Brewster, by the statute of 1802, c. 76 ; that after the incorporation an agreement was made, by the overseers of the respective towns, to divide and settle half the then poor of Harwich, to be supported by Brewster, in which agreement the same Stephen Snow, with others, are stated to be delivered by Harwich, and to be received by Brewster, to be supported, and two other paupers were to be supported at the *249 equal and joint expense of the two towns ; that at the time of incorporation, and long before, Stephen Snoio was a pauper, having his settlement in Harwich, and living in that part not included in Brewster; and that his daughters are young children, living with him as part of his family, but that neither his wife nor daughters had, at or before the incorporation, been personally a charge upon Harwich for their maintenance.
The general error is assigned ; and if the settlement of the wife and children of Stephen Snow is in Brewster, the judgment must be affirmed; otherwise it must be reversed.
Both parties have very properly admitted that the wife and daughters have no settlement in their own right, and that it is derived from Stephen Snow, the husband and father.
Stephen having his settlement in Harwich, there it must continue, unless he gained a settlement in Brewster, either by the act incorporating it, or by the agreement of the overseers made in consequence of that act. The part of the act relating to this subject is the fifth section, which provides that all debts due to or from Harwich shall be divided between Harwich and Brewster in proportion to the state valuation ; and that the poor, with which the former town was * then chargeable, together with such [ * 280 J poor then removed from Harwich, and which might after-wards be lawfully returned to that town for support, shall be divided between the two towns in the same proportion.
The operation of an act incorporating a part of Harwich into Brewster, where no regulations respecting the poor are included, does not admit of dispute. All the inhabitants of the territory now in Brewster, who were settled in Harwich, have acquired a new settlement in Brewster; and all persons settled in Harwich, but inhabitants of other places at the incorporation, remain settled in Harwich, if, when they last dwelt in that town, they lived on lands remaining to Harwich; but if they lived on lands included in Brewster, they gained a new settlement in Brewster. .These distinctions are founded on the statute of 1793, c. 34. Before this act, all persons settled in Harwich at the time of the incorporation of Brewster, but then dwelling elsewhere, would have retained their settlement, although they might have removed from that part of the town included in Brewster, (a)
The intent of the fifth section of the act incorporating Brewstm *250 is therefore to be determined. And we are of opinion that it can have no effect to change the settlement of any of the inhabitants of either of the towns. Those living in Brewster have a new settlement in that town, and those living in Harwich have their old settlement. It is the manifest intent of the section to provide for the apportionment of the charges of maintaining the then poor of both the towns, and of such as should afterwards be returned , that these charges should form a common stock, to be borne by the two towns according to their taxable wealth, to be ascertained by the state valuation.
It is our duty to give such a construction of this section as would enable either town to execute it against the assent of the other. But how could the settlements of the poor be accommodated to any pro rata division of the charges of maintenance ? Neither town could institute a process against the other, to obtain a removal of paupers, but of those actually settled in the town, against which the process should issue. The number of paupers might be [*281] uneven, and a division * of them would leave a pauper undivided, or half a pauper to each town ; and who are authorized to make a division ? The charges of maintaining one pauper may be much greater than the charges of maintaining any other pauper ; and if a power was given to any persons or court to divide them according to the charges of maintenance, in the proportion directed by that section, it is not very probable that any such division would correspond with a division of the paupers without leaving a fraction. We therefore feel ourselves obliged to apply this section to a division of the charges of maintenance, and not of the persons of the poor. On this construction, each town may advance the charges of maintaining the poor having a settlement within it, and by legal process may compel the other town to reimburse its due proportion.
The section appears to have been draughted very loosely ; and this construction is supported by that part' of it relating to debts. The debts due to or from Harwich are to be divided in the same proportion. But it is evident that this division could not change the relation between creditor and debtor. The town of Hanvich may therefore compel by law the payment of all the debts due, and when received must pay over to Brewster its proportion. So Harwich may be compelled to pay all the debts owing, and may call on Brewster to reimburse its proportion.
If this section has no operation upon the settlement of the poor, it is evident that the agreement between the towns could have no such operation ; because the towns have no legal authority to alter the settlements of any of the inhabitants.
We desire to be understood as giving no opinion that these towns *251 could not lawfully agree, each to maintain a particular part of the poor, instead of apportioning the charges among themselves. An agreement of this kind may be convenient and beneficial to both towns, and may be enforced by an action at law to recover damages for the breach of it.
As we are of opinion that Stephen Snow’s settlement remains in Harwich, notwithstanding the agreement of the overseers, it is unnecessary to decide whether his wife and daughters were or were not a charge as paupers on Harwich * at the time [ * 282 ] of the incorporation ; because the husband and father was then a town charge. If it were necessary to decide this question, the kind and degree of relief which he received should have been stated.

Let the judgment he reversed, with costs.

 [Windham vs. Portland, post, 384. — Bath vs. Bowdom, post, 452. — Salem vs Hamilton, post, 676.— Westport vs. Dartmouth, 10 Mass. Rep. 341. — Barrington vs Lancaster, 14 Mass. Rep. 253. —Norton vs. Mansfield, 16 Mass. Rep. 48.— Bridgewater vs. West Bridgewater, 9 Pick. 55. — Middleborough vs. Clark, 2 Pick. 28. — Walpole vs. Hopkinton, 4 Pick 357. — Sutton vs. Dana, 4 Pick. 117. — Ed.]