### SAMUEL F. HAVEN vs. CITY OF LOWELL.

The case of *Spaulding* v. *City of Lowell*, 23 Pick. 71, recognized and confirmed.

A town duly passed a vote appointing a committee to purchase certain land for the site of a market house, to make an estimate of the expense of such house, and to report at the next town meeting: The warrant for the next town meeting was, " to hear reports of committees appointed to purchase land, and furnish an estimate of the expense of a market house ; to see if the town will authorize their treasurer to borrow, on the credit of the town, such sum of money as may be necessary to enable said committee to purchase the land and erect a suitable building for a market house ; or act on that subject as they think proper : " At that meeting, the committee reported that they had purchased the said land, and recommended that the town should purchase an additional lot of land, adjoining that already purchased, and thus obtain a more commodious site for the market house : Whereupon the town voted, (among other things,) that said committee be authorized to purchase said additional land. *Held*, that the subject matter of this vote was so inserted in the warrant, as to give the vote full legal operation, under *St.* 1785, c. 75, § 5.

An agreement for the purchase of land for a town, made by all the members of a committee duly authorized by the town to purchase it, and put in writing and signed by part of the committee, on behalf and at the verbal request of the committee, is the written agreement of the whole committee, and binding on the town.

Where an agreement, made for the purchase of land for a town, by a committee of the town, is invalid, such agreement is ratified and confirmed by a subsequent vote of the town, authorizing the committee to complete the purchase of the land by them bargained and contracted for.

BILL IN EQUITY for a specific performance of an agreement for the purchase of land.

It appeared from the bill, the answer, and an agreed statement of facts, that the town of Lowell, at a legal meeting on the 2d of March 1835, chose a committee of seven persons to consider the expediency of the erection of a market house by the town, and to report thereon at the next April meeting : That said committee, at a legal meeting of the town on the 6th

of April 1835, reported that it was expedient to erect a market
house, and that they had found an unoccupied piece of land on
Middle Street, which could be procured for 62½ cents per foot,
and which they recommended as a site for such house ; and that
the town thereupon voted that the persons constituting said
committee be a committee to purchase said land on Middle
Street, to prepare a plan for a market house, to make an esti-
mate of the expense of said house, and to report at the next
town meeting : That a meeting of the town was duly held on
the 27th of the same April, and that the second article in the
warrant for calling that meeting was, " to hear reports of com-
mittees appointed to purchase land and to furnish an estimate of
the expense of a market house ; to see if the town will author-
ize their treasurer to borrow, on the credit of the town, such
sum of money as may be necessary to enable said committee to
purchase the land and erect a suitable building for a market
house, or act on that subject as they think proper : " That at
this meeting the aforesaid committee reported that they had,
agreeably to the direction of the town, purchased, for the site
of a market house, a piece of land on Middle Street, of the
dimensions of " two hundred and forty feet in width by ninety
in depth, at 62½ cents per foot, amounting to $ 13,576," and
that the probable expense of such house, (built according to a
plan exhibited by them,) would not exceed $ 10,000 : That the
committee reported at the same time, that since they had pur-
chased said land on Middle Street, an additional quantity of
land, situate on Lowell Street, and adjoining to the land already
purchased, had been offered to them, which was one hundred
and forty seven feet in width, and ninety in depth, the av-
erage price of which was ninety cents per foot, amounting to
$ 11,984·52, and which they recommended that the town
should purchase ; whereby the town would be " in possession
of five thousand feet of more land, the whole extending from
Middle Street to Lowell Street, one hundred and eighty feet in
length, by one hundred and forty seven feet in width, containing
twenty six thousand six hundred and thirteen feet ; " on the
*entre* of which the committee proposed to place the market

house, and which, when completed, would extend from street to street : That the town thereupon voted that the said committee be authorized to purchase the land on Lowell Street, and to build a market house one hundred and sixty six feet in length, according to the plan exhibited ; and that " the treasurer of the town be authorized and empowered to pledge the credit of the town to secure any loan which might be procured for the purpose of buying land on which to erect a market house, by signing or executing any bond or other security necessary for that purpose, for a sum not exceeding $ 40,000 : " That on the 29th of April 1835, the following agreement was made, and was signed by two members óf said committee, on behalf and at the verbal request of the committee : " Lowell, April 29th 1835. The committee, appointed by the town of Lowell to purchase land and erect a market house, agree to purchase Samuel F. Haven's part of a lot of land on Lowell Street, owned in common with Wright & Mixer, at ninety six cents per square foot. The papers to be made out as soon as practicable, and the title is ascertained to be clear of incumbrance. For the committee JOHN NESMITH. JONATHAN TYLER : " That the plaintiff, on said 29th of April, gave to said committee an obligation to convey said land, for said sum : That a meeting of the town was duly held on the 1st of June 1835, and that the fourth article in the warrant for calling that meeting was as follows : " To see if the town will authorize their committee, or a major part of them, to borrow, on the credit of the town, a sum sufficient to purchase the land on Lowell and Middle Streets, now contracted for by said committee, in behalf of the town, and erect thereon a building to be used as a market house, and prescribe the manner of effecting a loan, and the terms and duration thereof, and instruct the town treasurer not to pledge the credit of the town for the loan which was voted to be procured, at the town meeting held April 27th 1835 : " That in acting on said article in the warrant, the town voted that the aforesaid committee, or a majority of them, " be authorized and empowered to complete the purchase of the land, by them bargained and contracted for, of the Proprietors of the Locks

and Canals on Merrimack river, situated on Middle Street, and of Joseph B. French, Samuel F. Haven, Elijah Mixer, and Hapgood Wright, on Lowell Street, for the site of a market house for the use and accommodation of the inhabitants of the town ; and that said committee be fully authorized and requested to erect, or cause to be erected thereon, a market house one hun dred and sixty six feet in length and forty five feet wide, con formably to a plan or model presented to the town ; that said committee or a majority of them be authorized to borrow a sum not exceeding $40,000 on the credit of the town, for the pur pose of purchasing the necessary land and erecting thereon a market house for the use and accommodation of the citizens of the town, and to give proper security for the money they may borrow, making the same payable in not less than ten nor more than twenty years, or at various times within those limits ; and that all authority, heretofore given to the town treasurer to bor- row money or pledge the credit of the town for the purpose of building a market house, be revoked : " That on the 31st of October 1835, a meeting of said town was duly warned and held, at which the aforesaid committee made a report, stating that they had been foiled in all their attempts to carry into effect the votes of the town, passed at the meeting holden on the 1st of June preceding, but that they had secured a lot of land, between Lowell Street and the canal, two hundred and five feet long, and ninety feet wide, and paid therefor seventy-five cents per foot, " on their own responsibility," amounting to $14,055 ; which lot they deemed more eligible for the site of a market house than any other which could be obtained : That the town thereupon voted to accept said report, to purchase said lot of land at the price aforesaid, take a deed thereof, build a market house thereon, not exceeding one hundred and sixty six feet in length, and fifty feet in width, nor less than one hundred and forty feet in length, and forty five feet in width, two stories high, &c. ; and " that all votes previous to this meeting, upon the subject of a market house, be rescinded : " That the plaintiff had always been ready to perform his part of the aforesaid agreement of the 29th of April 1835, and that he, after the

passing by the town of the votes last above mentioned, requested the aforesaid committee and the town to pay him for his said land, according to said agreement, and tendered a deed of the same, but that the said committee and the town had wholly neglected and refused to perform their part of said agreement.

It was agreed by the parties, that if the court should be of opinion that the defendants are bound to perform the agreement above set forth, they should not be required to take a convey·ance of said land, but that the cause should be referred to a master to ascertain and report the amount of damages that should be paid to the plaintiff in consequence of their non-fulfilment of said agreement : The damages to be ascertained by finding the difference between the present cash value of said land and the sum contracted to be given therefor, and by adding to the said difference the interest on the sum, thus contracted to be paid, from the date of said agreement ; and execution to issue for the amount of damages thus ascertained.

*T. P. Chandler*, for the plaintiff.

*Dexter & Robinson*, for the defendants.

HUBBARD, J. This is a bill in equity for the specific performance of a contract entered into by the inhabitants of the town of Lowell with the complainant, as he alleges, for the purchase of a piece of land on which to erect a market house.

The case comes before the court on the bill, answer, and an agreed statement of facts, consisting principally of certain votes and proceedings of the town of Lowell.

The town having relinquished the purchase of the land of the plaintiff, in consequence of their inability to procure other lands in the vicinity which were necessary for the completion of the plan contemplated by them, now deny their obligation either to take the said land, or to satisfy the plaintiff for the loss on the same, and contend that he has no legal or equitable right that can be enforced against them.

The defendants, who are the successors of the town of Lowell, allege, in substance, three grounds of defence against the plaintiff's bill ; one, that the land in controversy was not

necessary for the purpose contemplated by the town, and there-fore they were not authorized to purchase the same ; a second, that the subject of purchasing the land of the plaintiff was never legally brought before the inhabitants of the town in such manner as to bind the defendants by any vote relating to the same ; and a third, that the contract was not duly executed by the committee on behalf of the inhabitants, nor afterwards rati-fied by them.

As to the first objection, that the land in controversy was not necessary for the purpose contemplated by the town — which was the erection of a market house on a large scale — we consider it virtually settled in *Spaulding* v. *City of Lowell,* 23 Pick. 71, in which case the same question arose in regard to the market house actually built, and the uses to which it was applied. In the close of their opinion, the court say, " as to the size and other circumstances of the building " (which neces-sarily included the land purchased on which it was erected,) " if the accomplishment of the object was within the scope of *the corporate powers of the town, the corporation itself was the* proper judge of the fitness of the building for its object, and it is not competent, in this suit, to inquire whether it was a larger and more expensive building than the exigencies of the city required." So in this case, the object being within the powers of the town, we think it was competent for the inhabitants to determine the size of the lot that would be necessary and com-modious for the uses intended, and that for this purpose they might properly consider the progressive increase of the town.

It is contended by the defendants, that the second article in the warrant for calling the town meeting on the 27th of April is confined to the subject of borrowing money, and cannot be extended to include the purchase of land, other than that already contracted for, on which to erect a market house. *St.* 1785, *c.* 75, § 5. In giving a meaning to this article, if we were to treat it as a contract between parties, we might be disposed to yield to the limited construction put upon it by the defendants. But we cannot view it in such a light. The articles inserted in warrants for calling town meetings, presenting the various sub-

jects for the consideration of the inhabitants, are from the very nature of the case general in their description, and are oftentimes inartificial in their construction. They are the mere abstracts or heads of the propositions which are to be laid before the inhabitants for their action ; and matters incidental to and connected with such propositions are alike proper for their consideration and action. If it were otherwise, and the articles were to be the subject of a very critical analysis, much confusion and delay might ensue, and towns would be as often employed in discussing the construction of the articles in the warrant, as in the consideration of the subjects embraced in them.

In the present case, the town were called upon to hear the report of the committee appointed to purchase land on which to erect a market house and furnish an estimate of the expense attending it, and to determine whether the town would borrow money to enable the committee to make the purchase and erect the building, or to act on the subject as they might think proper. Now the town, at a previous meeting, had not only been informed that the committee had selected a suitable piece of ground which could be obtained at a given price, and that in their opinion it would be wise for the town to secure it ; but the town had acted on their report, and the same committee were appointed to make the purchase and prepare an estimate of the expense of the house. But it must have been obvious to any one taking an interest in the matter, that the committee, though authorized to purchase the land, might find embarrassments in the way, either as it regarded the title, or the terms of payment, or the security to be given ; or they might have found a more eligible site ; or they might alter the plan of the intended building, and might need more land to carry into effect any such alteration, to the greatest advantage ; as the town was then in a state of rapid growth. It is therefore no forced construction to give to the article a more enlarged meaning than the defendants contend for, and to say that it included the whole subject of the purchase of land and the plan of a building ; that the inhabitants might well believe that the whole matter was still open for their consideration, and would readily expect that

4 *

changes might be reported by the committee on the subject generally, upon which they would be called upon to act; as well as on the manner of procuring the loan to carry the project into effect.

But even if we had doubts as to giving this enlarged construction to the article, we are satisfied that the subject was fully presented to the town at the meeting on the 5th of June, and that the inhabitants then acted with a full knowledge and understanding of the agreement on the part of the committee to purchase the land of the plaintiff.

This raises the questions, whether the contract signed by two of the committee of the town, and delivered to the plaintiff, was duly executed by the committee so as to bind the town; or, if informal and imperfect as an agreement, whether the act of the town, at their meeting of the 5th of June, was not only a waiver of such informality, but a ratification of the act of the committee.

In respect to the contract signed by two of the committee, and exchanged with the plaintiff for a memorandum taken from him, agreeing to convey the said land to the town, it is well understood, that unless otherwise instructed by the body appointing them, committees act by majorities, and that it is usual for one to sign on behalf of the rest; and in common cases, the signature of one of the number, purporting to be for the committee, will be good *primâ facie* evidence of the act of the committee. And we think where two sign in behalf of the whole, the inference is the same. It is indeed agreed by the parties that the paper was signed by two at the verbal request of the other members; but further than that, it is evident it was the act of the committee, from the fact that the town, at the meeting of June 1st, voted to authorize the same committee, or a majority of them, to complete the purchase of the land by them bargained and contracted for with the plaintiff, for the site of a market house, &c. If therefore the contract were defective in the manner of its execution, this vote is such a confirmation and ratification of the doings of the committee, as would effectually cure any such defect; and it would have probably

precluded the plaintiff from denying that the town had bound themselves to him, if they had called on him to make the conveyance, and he had refused. ⸗ Though the defendants have contended that the meeting of the 1st of June did not confirm the contract of April 29th, nor authorize the committee to proceed until the money was procured, yet we entertain no doubt on this point. The meeting was called to see if the town would borrow money to complete the purchase of the land contracted for, including the plaintiff's, and to enable them to erect the building. And the town at their meeting deliberately ratify the contracts for the land, and in an independent vote direct and empower the committee to borrow, on the credit of the town, a sum sufficient for the purchase of the land and the erection of the market house. And these contracts would have been completed, but for difficulties which arose in regard to effecting a loan on the credit of the town ; and there appears to have been no default or inability on the part of the plaintiff to comply with his undertaking.

Without farther enlarging on the facts, we are of opinion that the contract, made by the committee of the town with the plaintiff, was well executed on the part of the committee, was ratified by the town at a meeting in which the subject of such contract was legally brought before them, and that they are now bound to fulfil their engagement, notwithstanding they found it necessary to make a purchase of land afterwards in a different place.

According to the agreement of the parties, the case is to be sent to a master to ascertain the difference between the present cash value of the land and the price contracted ·to be given therefor, with interest on the amount, thus ascertained, from the time of the contract.