## WILLIAM H. WHITNEY *vs.* INHABITANTS OF STOW.

At a meeting of a school district, called by a warrant containing an article "To see if the district will raise money to pay debts of the district, or act thereon," the district may vote "to authorize the treasurer to borrow money to pay debts of the district;" and under this vote the treasurer may borrow money at seven per cent. ; and if he gives the promissory note of the district therefor, such note, even if not negotiable, is evidence for the payee of money lent.

A promissory note, purporting to be made by the Inhabitants of School District No. 5 in a town, and signed "A. B., Treasurer of District No. 5," is the promise of the district.

To an action against a town by a creditor of one of its school districts, which were abolished by the St. of 1869, *c.* 110, it is no defence that the town did not deduct the debts of the district from the amount it remitted to the district, as authorized by the St. of 1869, *c.* 423.

A statute imposing upon towns the debts of their school districts which have been abolished by a previous statute, passed at the same session of the Legislature, is constitutional.

CONTRACT. The declaration alleged that the Inhabitants of School District Number Five in the town of Stow made a prom-

issory note, payable to the plaintiff or order, a copy of which was annexed ; that the district had not paid the note; that the defendants had by statute become liable for all the debts of the district ; and that they owed the plaintiff the amount of the note. The note declared on was as follows : " Stow, March 17, 1869. For value received, the inhabitants of District No. 5 in Stow promise to pay William H. Whitney or order the sum of twelve hundred dollars, on demand, with interest at seven per cent. S. P. Brooks, Treasurer of District No. 5." The case was submitted to the judgment of this court on agreed facts substantially as follows :

A meeting of the district was held on March 13, 1869, under a warrant, one article of which was, " To see if the district will raise money to pay debts of the district, or act thereon." Under this article it was voted " to authorize the treasurer to borrow money to pay debts of the district, if called for ;" and Brooks was chosen treasurer. Brooks borrowed $1200 from the plaintiff on March 17, 1869, and gave him the note declared on. The money borrowed was used to pay other notes which the district had given for money used in building and repairing school-houses.

The school district system being abolished by the St. of 1869, c. 110, the property of the school districts was appraised, " and the work of the assessors, except the signing and delivery of the collector's warrant," was completed before June 21, 1869, the date of the passage of the St. of 1869, c. 423. The warrant was signed and delivered on June 22. The assessors did not know of the St. of 1869, c. 423, until the collector had fully completed his work.

The defendants offered to prove the following facts, and if they were deemed material by the court, then the case to stand for trial to enable them to do it. " The appraisal of school district property was made by a committee of appraisers without deducting district debts ; the town took possession ; and the assessors of the town, believing that in District No. 5 there had been in time past actually raised by taxation for the district property a sum equal to the then appraised value, proceeded to assess and remit to the taxpayers of the district the full appraised value, $2400 ;

and it now appears that the outstanding notes of the district at that time amounted to about that sum."

Upon the above statement, such judgment to be rendered as the court should adjudge the law and facts required.

*T. H. Sweetser & W. S. Gardner*, for the plaintiff.

*J. G. Abbott*, for the defendants.

GRAY, J. The school districts formerly existing in this Commonwealth were *quasi* corporations, of the same class as towns, vested with powers coextensive with the duties imposed upon them by law or usage, authorized to make such contracts as were reasonable and proper to carry out the purpose of their creation, and capable of suing and being sued thereon. They were expressly empowered by statute to raise money by taxation of the inhabitants; yet they were not obliged to resort to that means as often as they had need of money, but might, by votes passed at a meeting duly called for the purpose, borrow money to build school-houses or to pay debts already incurred for building them. *Rumford School District* v. *Wood*, 13 Mass. 193. *Gaskill* v. *Dudley*, 6 Met. 546. Gen. Sts. *c.* 39, §§ 2, 13–15, 18, 22 *& seq.*

Warrants calling meetings of municipal corporations are not to be construed with technical strictness. *Sherman* v. *Torrey*, 99 Mass. 472, and cases cited. The words in the warrant issued in this case, " To see if the district will raise money," were sufficient to cover obtaining money in any mode authorized by law. It is true, as was argued by the learned counsel for the defendants, that those words are usually applied in the statutes to levying it by taxation. But in one instance, at least, they in terms include also the borrowing of money upon a pledge of the credit of a town. Gen. Sts. *c.* 18, § 79.

The district, being authorized to borrow money, had the incidental power to give a written promise to the lender for its repayment, with a reasonable rate of interest. The note given in this case purports to be the contract of the corporation, and not the individual promise of its treasurer. *Blanchard* v. *Blackstone*, 102 Mass. 343. *Carpenter* v. *Farnsworth*, 106 Mass. 561. It is not necessary to consider whether the district could lawfully issue

negotiable notes; for this action is brought by the original creditor, the submission of the case upon an agreed statement of facts waives all objections to the form of the declaration, and the note is at least evidence of the agreement between the school district and the plaintiff. *Smith* v. *Cheshire*, 13 Gray, 318.

The contract sued on was therefore originally a debt of the school district, and the remaining question in the case is whether it has become a debt of the town.

By the St. of 1869, *c.* 110, § 1, the school district system in this Commonwealth was abolished. By § 2, each town in which the system existed was directed forthwith to take possession of the school-houses, land and other property owned and used by the several school districts therein, appraise the same, levy a tax therefor, and remit the amount of the tax to the taxpayers of the district; provided, however, that the appraisal of the school property in any district, or the amount to be thus remitted, should not exceed the sum that had been actually raised by taxation in such district for such property. And by § 3, the corporate powers and liabilities of any school district so abolished were continued so far as might be necessary for the enforcement of its rights and duties. That act was passed on March 24, 1869, and took effect upon its passage.

The additional act of 1869, *c.* 423, which was passed on June 21, 1869, at the same session of the Legislature, and likewise took effect upon its passage, (besides making similar provisions as to union districts and contiguous school districts in adjoining towns,) in § 5 amended § 2 of *c.* 110, by striking out the proviso above stated; in § 7 declared that this amendment should not apply to any town that had already, under *c.* 110, taken possession of and appraised its school district property, unless the town should vote to re-appraise such property; and in § 6 provided that towns in which school districts had been abolished under either act " shall respectively assume and pay all the debts and liabilities of such districts, and the amount of such debts and liabilities shall be deducted from the amount to be remitted by such town."

The intention of the Legislature, as manifested by the additional act, was that the limit, declared in the original act, of the amount to be levied by the town upon its inhabitants and remitted to the taxpayers of the school districts abolished by the Legislature, should not apply to any case in which the appraisement of the property of the school districts had not been already completed before the passage of the additional act; that all the debts and liabilities of any school district abolished under either act should become the proper debts and liabilities of the town ; and that the amount of the debts and liabilities so imposed upon the town should be deducted from the amount to be remitted by the town to the district in payment for the property of the latter.

But the responsibility of the town for the debts and liabilities thus charged upon it is not made to depend upon the question whether the town does or does not deduct the amount thereof from the amount remitted by it to the district. The facts, that the appraisers of the defendant town did not know of the passage of the additional act until the completion of the appraisement, and that the town did not deduct the amount of the debts of the district from the appraised value of the school-houses and other property of the district, do not affect the right of any creditor of the district to sue the town. The obligation to pay the debts of the district was imposed upon the town by a public law, of which all persons and corporations within the Commonwealth were bound to take notice, and did not require any promise or consent of the town to give it effect. 1 Kent Com. (6th ed.) 454, 458. *Central Bridge* v. *Abbott*, 4 Cush. 473.

The doubt suggested at the argument as to the constitutionality of the St. of 1869, *c*. 423, § 6, appears to the court to be without foundation. The power of the Legislature to abolish, at its discretion, school districts or other districts, established by its authority for special municipal purposes, is undoubted. *Blackstone* v. *Taft*, 4 Gray, 250. *Weymouth & Braintree Fire District* v. *County Commissioners*, 108 Mass. 142. It was equally within the constitutional power of the same Legislature which abolished the school districts and merged them in the town, and provided for the transfer to the latter of the property of the former, to

charge the town with the whole or any part of the debts of the districts. The case falls within the principle upon which it has long been held that the Legislature, on dividing one town or county into two, or annexing one town to another, may provide what part of the property of the first corporation its successors should take, and what part of its obligations the latter should bear and discharge; and that a provision as to the burden and payment of such obligations may be made either in the original act of division or annexation, or in a supplemental act passed at the same session. *Brewster* v. *Harwich,* 4 Mass. 278. *Windham* v. *Portland,* Ib. 384, 390. *Hampshire* v. *Franklin,* 16 Mass. 76, 85.                    *Judgment for the plaintiff.*