## TOWN OF SOUTH PORTLAND

### *vs.*

## TOWN OF CAPE ELIZABETH.

Cumberland.    Opinion December 28, 1898.

*Towns.    Division.    Special Laws, 1895, c. 194.*

When part of a town is set off and incorporated as a new town, the old town, though shorn of part of its territory, still retains all the property, powers, and rights, and remains subject to all the obligations of the original town, unless otherwise provided in the act.

Chapter 194 of the special laws of 1895, which divided the town of Cape Elizabeth, treats South Portland, though under another name, as the old town from which the "new town" of Cape Elizabeth was set off. South Portland being treated in the act as the original town, became primarily liable for all its debts and is entitled to receive its assets. The act provided that "the town debt shall be borne by said towns in proportion to the valuation of taxable property and estate within their respective territories, as taken by the assessors in April eighteen hundred and ninety-four." Prior to the annual meetings in March, 1897, in both towns, a committee from each had ascertained and reported to each town at that meeting, that South Portland had paid of the debts of the old town, in excess of assets received, $25,150.09, and that Cape Elizabeth's proportion of that excess was $6,053.69. These reports were accepted by each town, and no question appears to have been raised as to the accuracy of their amounts.

*Held;* that under the provisions of § 3 of the act, it then became the duty of Cape Elizabeth to refund to South Portland this amount, and the law implies a promise on the part of Cape Elizabeth to pay it.

The town property, consisting of school houses, ferry wharf and other like property, was apportioned by § 4 of the act, by giving to each town what was situated within its territory. *Held;* That the language of the section is plain and imperative and cannot be modified by the court to meet any supposed equity. It was within the province of the Legislature to make such division, and it is to be presumed that the Legislature considered all the equities.

*Held;* that South Portland is entitled to recover from Cape Elizabeth its proportion of debts paid by South Portland, immediately after the payment. It is not obliged to wait till all the debts are paid.

ON EXCEPTIONS BY DEFENDANTS.

This was an action on the case brought by the plaintiff against the defendant for money paid to the use of the defendant. The case was heard by the presiding justice without a jury at the April term, 1898, the right to except being reserved.

The court ruled as matter of law that upon the evidence the plaintiff was entitled to recover, and ordered judgment for the plaintiff in the sum of $6,053.69 with interest from May 26, 1897, when demand was made for payment of the same.

To this ruling and to the exclusion of the evidence offered by defendants, as appears in the opinion of the court, the defendant took exceptions.

*Nathan and Henry B. Cleaves, Stephen C. Perry and Edward C. Reynolds,* for plaintiff.

*J. W. Symonds, D. W. Snow and C. S. Cook; and Elgin C. Verrill,* for defendant.

SITTING: PETERS, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, JJ.

STROUT, J. This cause was submitted to the presiding justice with right of exception. To his ruling that plaintiff was entitled to recover, exception was taken.

The Legislature, in 1895, c. 194, of Special Laws, set off and incorporated a portion of the old town of Cape Elizabeth, into a new town by the name of Cape Elizabeth, and the remaining portion of the old town was given the name of South Portland.

The Act provided, section 3, that "the existing liabilities of the present town of Cape Elizabeth shall be divided as follows: the town debt shall be borne by said towns in proportion to the valuation of taxable property and estate within their respective territories, as taken by the assessors in April, eighteen hundred and ninety-four; and shall continue to pay the same proportion of the

State and county taxes assessed upon the present town of Cape Elizabeth, until a separate valuation shall be made by the State assessors. All paupers now supported or aided by the present town of Cape Elizabeth, or that may hereafter become chargeable as paupers, shall, after division, be chargeable to and maintained and supported by the new town of Cape Elizabeth, or the town of South Portland, according as their last settlement may fall within the respective territories of said towns."

Section 4 provided that "all town property, real and personal, now situated within the limits of said new town of Cape Elizabeth, shall become the property of said new town, and all town property, real and personal, now situated within the limits of said town of South Portland, shall become the property of said town of South Portland."

It will be observed that these two sections treat South Portland, though under another name, as the old town from which the new town is set off, and the Cape Elizabeth created by the act, as a "new town." This distinction is important, as it shows the primal relation which South Portland bears to the debts and duties of the old town of Cape Elizabeth. Where part of a town is set off and incorporated as a new town, the old town, though shorn of part of its territory, still retains all the property, powers and rights and remains subject to all the obligations of the original town, unless otherwise provided in the act. *Frankfort* v. *Winterport,* 54 Maine, 250; *No. Yarmouth* v. *Skillings,* 45 Maine, 133; *Poland* v. *Strout,* 19 Maine, 121; *Inhabitants of Windham* v. *Inhabitants of Portland,* 4 Mass. 384.

As the act treated South Portland as the old town from which the "new town of Cape Elizabeth" was set off, it became the duty of South Portland primarily to liquidate the liabilities of the original town; the new town of Cape Elizabeth, by the act, being responsible to refund its proportion of such liabilities to South Portland. Creditors of the old town could require payment from South Portland; they could not from the new town.

Both towns have acted in accordance with this view. Taxes assessed before division upon inhabitants of the new town were col-

lected and paid into the treasury of South Portland. All other available assets, except some tax deeds and sewer assessments which were divided by agreement, have been turned in to that town, and that town has paid all the debts of the original town, which have been paid.

Shortly after the division each town appointed a committee to confer with each other, to adjust the financial affairs between the two towns. These committees met and acted as a joint committee, and appointed a sub-committee from its members to examine and report to the joint committee, the assets and liabilities of the old town. The sub-committee made its report to the joint committee, which was adopted by the latter unanimously, and each town committee reported the result to the annual meeting of each town in March, 1896. These reports gave the amount of liabilities and assets, both agreeing, and each town at that March meeting, accepted the report, and continued its committee to make further progress, by way of final settlement. The vote of defendant town was to "adopt" the report of the committee.

At the March meeting in 1897, each committee again reported to its town, both agreeing upon the amount of liabilities paid by South Portland, and amount of assets received by it, and the share of the excess of payment which devolved upon the defendant town, which is the amount sued for in this action. Defendant town at that meeting accepted the report of its committee; but the committee of defendant town claimed that public property, such as school houses, ferry wharf, gravel banks and like property should be treated as assets for the payment of debts. They had not been so treated by the joint committee.

The committee of defendant town claimed that to ascertain its liability under section 3 of the act, all this class of property should be valued and treated as an asset, and together with available assets, which the joint committee had ascertained, should be deducted from the gross liability, and that the result thus obtained would constitute the net debt, to be apportioned according to the valuation of 1894; while South Portland claimed that this class of property was divided by section 4 of the act, and should not enter into the calculation.

We do not understand that the parties disagree as to these amounts, nor is it denied that the payments were made upon legal claims against the original town. But defendants insist that no promise on the part of the new town of Cape Elizabeth can be implied in favor of South Portland, because it was not consulted about the payments, and because they were not made at its request.

And counsel say, that the writ declares upon an accounting by the committees of the two towns, and adoption by them of the result, and a promise to abide and pay, and that the evidence fails to show such adoption or promise. However this may be, the writ contains a money count under which sums equitably due may be recovered. South Portland was bound to pay these debts in the first instance ; then the liability of the new Cape Elizabeth attached. In such case, payment by South Portland was not a voluntary payment of another party's debt, without his request or consent, but it was a payment of its own debt, to which defendant was bound by law to contribute its proportion. Defendant's liability does not depend upon express agreement, or previous request of payment. The duty of payment was upon South Portland; and when it had paid, and as fast as it paid, the duty to reimburse its proportion was imposed upon the new Cape Elizabeth. Where the law imposes the duty of payment, it implies a promise to pay. *Farwell* v. *Rockland*, 62 Maine, 301 ; *Mt. Desert* v. *Tremont*, 72 Maine, 348; *Inhabitants of Brewster* v. *Inhabitants of Harwich*, 4 Mass. 278.

But there is another ground more strongly relied on in defense. It was claimed, and offered to be proved by the defendant, that at the time of the division of the towns, there was property of the old town of the value of nearly $88,000, a schedule of which appears on page 35 of the case, consisting of schoolhouses and school property, gravel banks, ferry wharf and landing, and like property, all of which was subject to the provisions of section 4 of the act of division; that of this property nearly $75,000 in value was in South Portland, and nearly $13,000 in the new town of Cape Elizabeth; that if South Portland received of this property all that was within its territorial limits, as provided by section 4 of the act,

that town would receive about $10,000 more than its proportional share; and that this excess should either be set off against plaintiff's claim, or that it should be adjusted in equity as prayed for in the brief statement, and allowed to defendant to make the division of the property equal, under the proportion established by section 3 of the act of division. This evidence was excluded and exception taken.

It may be said, in passing, that if the claim of the committee of defendant town, that the debt to be apportioned under section 3, was the net debt, after deducting all town assets, and that the property mentioned in this schedule should be treated as an asset, this inequitable result would follow. The committees of both towns found the gross liabilities of the old town to be $78,690.38; the assets they found to be $37,894.42. If to these assets is added the school and other property in the schedule, valued at $87,746.70, there would be a total of assets of $125,641.12, an excess of $46,950.74 over the gross liabilities. South Portland would thus be required to pay the entire indebtedness without contribution from defendant town, and the property mentioned in the schedules would go to each town according to its location in each, under the provisions in section 4. The statement proves the fallacy of the claim.

Counsel for defendant do not press this bald proposition in terms, but they do say that "the town property is a fund which must justly be considered as offsetting or reducing gross liabilities, and it is a fund in which each part of the town, upon division, should share proportionately." If limited to property available for payment of debts, the proposition is true.

School houses and other like property built, maintained and used for public purposes, and necessary thereto, are not to be converted into cash for payment of debts. If it was done, the town would be obliged at once to replace them, and nothing would be gained. Such property therefore cannot be treated as an asset when debts and resources for their payment are considered.

But it is strenuously urged that, notwithstanding the provisions of section 4, by which this property is specifically divided, and

the impracticability of treating it as an asset, the Court should go into an equitable accounting in regard to it, and adjust for itself its fair and equitable division; and that when this is done, it is claimed that the payments therefor made by South Portland are not in excess of its proportion, and therefore it cannot recover; that the division of this property made by section 4, leaves to South Portland about $10,000 in value, in excess of its proportion under the ratio established by section 3, and that to equalize this, South Portland should pay upon the debts of the old town that amount, in excess of its proportion fixed by the statute.

Upon the division of a town the Legislature is presumed to take into consideration all the equities, when it divides this class of property. Questions of public policy and expediency enter in, and of these the Legislature is the exclusive judge.

Towns derive existence only from the will of the Legislature, and by it may be divided or destroyed, as it shall deem for the interest of the State or the inhabitants of the town. The court cannot stay its hand, or control or modify its exercise.

In this case, the Legislature has said that all of this class of property within the territorial limits of each town, shall belong to such town. It was competent for the Legislature to so determine; we have no power to revise that decision. *North Yarmouth* v. *Skillings*, 45 Maine, 141; *Frankfort* v. *Winterport*, 54 Maine, 250; *Agawam* v. *Hampden*, 130 Mass. 530; *Kingman, petitioner*, 153 Mass. 573; *Whitney* v. *Stow*, 111 Mass. 372; *Rawson* v. *Spencer*, 113 Mass. 45.

The language of section 4 is plain and explicit. No apparent equity can be imported into it to modify its express declarations. It gave to each town absolutely the property situated in each. Section 3 apportions "the town debt;" section 4 divides "town property." It is the plain duty of the court to give effect to these provisions, according to their terms and the evident intention of the Legislature. The evidence offered was rightfully excluded.

But if the evidence is considered, it is not apparent that South Portland has received the large excess of property claimed by the defendant. In its schedule, defendant includes the ferry wharf and

landing which it values at $10,000, about the excess claimed.. But this wharf and landing is a highway. It was laid out as such by the old town under authority of c. 602 of the Special Laws of 1871, for the purpose of a ferry to the city of Portland, and has always been used as such and is not likely ever to be used for other purposes. It is said that no income is derived from it: no evidence of any was offered. The burden of maintaining it falls upon South Portland, while its use, like other highways, is for the public generally. It can in no just sense be treated as an asset.

It is also urged that plaintiff should be postponed until all available assets shall be realized and all debts of the old town paid, and then the proportions of the two towns should be adjusted; that there are still outstanding debts, and doubtful assets that may be realized, and that only when these are ascertained can the proportion be adjusted. It may be many years before the whole debt shall mature, and it is manifestly a hardship to require South Portland to await that event before being reimbursed for the outlay it was compelled to make, for which the defendant is by law responsible. Such a result is not required by law, nor is it necessary to protect the rights of defendant.

The committees of both towns agreed upon the amount of available assets and the liabilities. Their report of that agreement was accepted by both towns. Those reports stated that South Portland had paid of the debts of the old town, in excess of all the available assets found by the committees, the sum of $25,150.09, and that the share of the new town of Cape Elizabeth of that excess was $6,053.69. No question of the correctness of these figures appears to have been made by the defendant town at the time of the committee's report, nor at any time since, nor that the payments were not properly made upon legal debts of the old town. If any farther assets shall be realized by South Portland, they must be applied toward the extinguishment of the debts of the old town, or ratably divided, if the two towns so agree. Farther payment of debts of the old town can easily be apportioned.

It is also objected that a lump sum is sued for, and the items not given. If defendant had desired a specification of items, the

court would have ordered it. It is now too late to make the objection. But if it were not, the action of defendant town upon the report of its committee and ever since may well be treated as an assent to the accuracy of the amount of payments for the old town.. The justice who heard the cause decided that plaintiff was entitled to recover the amount which the committee had reported as the share belonging to defendant to pay. That ruling necessarily was based upon a finding of the fact that that sum was the defendant's share. Such finding of fact is conclusive.

The plaintiff is entitled to recover of defendant its share of plaintiff's payment in excess of plaintiff's proportional share, as established by section 3, of the act of division.

The decision below was correct.

*Exceptions overruled.*