Butler, J.
Introduction[2]
This is an action by the plaintiffs, ten taxable inhabitants of the Town of Douglas (“the Town”), against the Town pursuant to G.L.c. 40, §53. The plaintiffs seek to restrain the Town from using any funds appropriated at the May 1, 2000 special town meeting for purchasing woodland property located on Manchaug Road in Douglas, Massachusetts. The action alleges that the Town’s appropriation of $200,000.00 from unexpended funds[3] was unlawful because the possibility of using unexpended funds to purchase the property was not contained in the warrant for the special town meeting. This matter is before the court on cross motions for summary judgment pursuant to Mass.R.Civ.P. 56. For the reasons discussed below, the defendant’s motion for summary judgment is ALLOWED and the plaintiffs’ motion for summary judgment is DENIED.
Background
The agreed upon material facts are as follows: On February 22, 2000, pursuant to G.L.c. 61, §§1 and 8, the Town, through its Board of Selectmen, gave notice of intent to exercise its statutory option to purchase the property located at 89 Manchaug Road in Douglas, Massachusetts (“the Property”).[4] As voted by the Board of Selectmen, the exercise of the option was subject, but not limited to, the following two conditions: (1) a favorable vote at the May 1, 2000 special town meeting, and (2) approval of a “Proposition 2 1/ 2" override[5] ballot question at the Town’s annual election on May 9, 2000.
On April 12, 2000, a warrant for the special town meeting scheduled for May 1, 2000, was posted in the Douglas Municipal Center and at least two other places in the Town to which the public has general access. The warrant consisted of only one article, the one in dispute. Article 1, entitled “Manchaug Road Property acquisition” read, “To see if the Town will vote to authorize the Board of Selectmen to purchase or take by eminent domain for public purposes 25+ acres of land in Douglas . . . located off Manchaug Road . . . [the Property]... and further, to raise and appropriate the sum of $200,000.00 for said acquisition, including costs incidental and related thereto; and further to raise this appropriation, the Treasurer, with the approval of the Board of Selectmen is authorized to borrow . . . and to issue bonds or notes of the Town therefor; addfrom warrant provided, however, that no money shall be expended unless the Town shall have voted for a debt exclusion from the limits of Proposition 2 1 /2, so called.”
At its customary open meeting prior to the town meeting to consider and advise upon the warrant article, the Town’s Finance Committee discussed the funding mechanism for the acquisition of the property. Ultimately, the Finance Committee recommended to the Board of Selectmen that the Town use unexpended funds to purchase the Property instead of borrowing money for the purchase. On April 26, 2000, at another open meeting, the Board of Selectmen elected to accept the Finance Committee’s recommendation to use unexpended funds instead of borrowing money to purchase the Property. Accordingly, the Board of Selectmen voted to alter the wording of the warrant article for its presentation as a main motion at the special town meeting. The motion to be acted upon at the May 1, 2000 special town meeting was phrased, in relevant part, as follows: “to authorize the Board of Selectmen to purchase . . . [the Property] . . . and further, to transfer from Available Funds (Free Cash) the sum of two hundred thousand ($200,000.00) dollars for said acquisition ...” The provision with respect to a vote for debt exclusion from the limits of Proposition 2 1/2 was not included in the motion.
On May 1, 2000, at the special town meeting, a written copy of the main motion containing the revised wording of the article was presented to the moderator prior to the motion being made. The moderator accepted the motion. The record reflects no challenge, discussion or disagreement at the special town meeting concerning the substitution of the new main mo *585 tion. It was moved and voted upon with the appropriation from unexpended funds substituted for the authorization for borrowing, and without the provision for a vote for debt exclusion from the limits of Proposition 2 1/2. The motion passed by a vote of thirty (30) to ten (10). On May 9, 2000, at the Town’s annual election, a ballot question seeking to exclude the proposed debt from the limits of Proposition 2 1/2 for acquisition of the Property,[6] was voted down, by a vote of 633 opposed, 496 in favor. The Town has filed a complaint for declaratory judgment with the Land Court to enforce its right of first refusal on the property. Incident to the vote at the special town meeting, the Town plans to use the unexpended funds to acquire the Property.
Discussion
I.The Summary Judgment Standard
A court will grant summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). In deciding a motion for summary judgment, the court may consider pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Community National Bank v. Dawes, 369 Mass. at 553; Mass.R.Civ.P. 56(c). The parties agree that there are no facts in dispute and that judgment can enter as a matter of law.
II.Standing
The Town contends that the plaintiffs lack standing to bring suit under G.L.c. 40, §53. This statute enables concerned taxpayers to enforce laws relating to a local official’s expenditure of their tax money. In pertinent part, the statute states:
If a town ... or any of its officers or agents are about to raise or expend money or incur obligations purporting to bind said town ... for any purpose or object or in any manner other than that for and in which such town . . . has the legal and constitutional right and power to raise or expend money or incur obligations, . . . the superior court may . . . determine the same in equity, and may, before the final determination of the cause, restrain the unlawful exercise or abuse of such corporate power.
G.L.c. 40, §53 (1999 ed. & 2000 Supp.).
The Town does not dispute that each of the ten plaintiffs is a taxpayer in the Town of Douglas or that $200,000.00 from the Town’s budget has been earmarked for the purchase of the Property. The issue is whether the special town meeting vote approving the expenditure of $200,000.00 from “free cash” was valid, or legal, given the difference in language between the article written in the warrant and the article approved by main motion at the special town meeting. “Ten or more taxpayers of a town may, by an equitable action, ask a court to determine the lawfulness of expenditures or obligations about to be incurred.” Oliver v. Town of Mattapoisett, 17 Mass.App.Ct. 286, 287 (1983); see also Pope v. Inhabitants of Halifax, 66 Mass. 410 (1853) (inhabitants of a town who own property liable to taxation had sufficient interest in the share of surplus revenue to maintain a suit to prevent misapplication of the surplus by the town).
The plaintiffs properly filed this action pursuant to G.L.c. 40, §53.
III. The Court’s Authority to Review Matters Acted Upon at a Town Meeting
General Laws c. 39, §15 sets forth the powers and duties of a moderator at a town meeting. In relevant part, the statute states that “the moderator shall preside and regulate the proceedings, decide all questions of order, and make public declaration of all votes . . .” G.L.c. 39, §15 (1999 ed. & 2000 Supp.). A moderator does not have the authority to decide substantive issues of law. Ellis v. Board of Selectmen of Barnstable, 361 Mass. 794, 799-800 (1972).
The Town argues that the moderator’s decision to allow a vote on the motion was a good faith ruling on a question of order that is not subject to judicial review. See Doggett v. Hooper, 361 Mass. 129, 133 (1940) (moderator’s good faith ruling to remove and confine a disorderly person who did not comply with moderator's order to withdraw from meeting was a question of order which, even if mistaken, was not subject to judicial review). The Town’s argument is misplaced because the issue to be decided in this case is not whether the moderator properly conducted or oversaw the special town meeting pursuant to G.L.c. 39, §15.[7] Rather, the issue to be decided by this court is whether the motion voted upon at the special town meeting exceeded the subject matter of the warrant, thereby rendering the action invalid pursuant to G.L.c. 39, §10. In pertinent part, G.L.c. 39, §10 states, ”[t]he warrant for all town meetings shall state . . . the subjects to be acted upon thereat... No action shall be valid unless the subject matter thereof is contained in the warrant. . .” G.L.c. 39, §10.
In light of the statute, it is proper for this court to review the validity of the vote taken at the special town meeting; and doing so does not usurp the moderator’s role of deciding points of order.
IV. The Warrant and the Validity of the Vote
“[A] warrant is of the essence of the town meeting. It is necessary in order that the people may know in advance the subjects upon which they may be required to act.” Attorney General ex rel. Mann v. City of Methuen, 236 Mass. 564, 574 (1921). ”[T]he subjects to be acted upon [at a town meeting] must be sufficiently stated in the warrant to apprise voters of the nature of the matters with which the meeting is authorized to deal.” Blomquist v. Arlington, 338 Mass. 594, 598 (1959) (citation omitted). Therefore, the ques *586 tion to be decided by the court is whether or not the warrant article for the special town meeting held on May 1, 2000 indicated with substantial certainty the nature of the business which was acted upon.
The warrant article with respect to the May 1, 2000 special town meeting was posted on April 12, 2000. The warrant article and the motion moved, voted upon, and passed, differed in two respects: (1) instead of borrowing $200,000.00, the Town voted to transfer $200,000.00 from unexpended funds; and (2) the provision with respect to a later general election vote for debt exclusion from the limits of Proposition 2 1/ 2 was not included in the main motion.
It was, therefore, the source from which the funds were to be raised under the article which differed from the source of the funds to be expended under the vote at the special town meeting. The matter voted upon at the special town meeting — the acquisition by the Town of twenty-five acres of forest land for $200,000 — was within the subject matter of the warrant.
“Every action taken at the meeting must be pursuant to some article in the warrant, and must be within the scope of such article.” R. Johnson, B. Trastornan, and C. Wadsworth, Town Meeting Time §4, at 12 (1984). Warrant articles are construed liberally, and they are held to be sufficient if they indicate with substantial certainty the nature of the business to be acted on. See Coffin v. Lawrence, 143 Mass. 110, 112 (1886). Therefore, the question to be decided by the court is whether or not the warrant article for the special town meeting held on May 1, 2000 indicated with substantial certainty the nature of the business which was acted upon. Warrants calling meetings of municipal corporations are not to be construed with technical strictness. Whitney v. Stow, 111 Mass. 368, 370 (1873) (“To see if the [school] district will raise money” language in warrant sufficient “to cover obtaining money in any mode authorized by law”). Indeed, as the Court explained in Haven v. Lowell, 46 Mass. 35, 41 (1842),
The articles inserted in warrants for calling town meetings, presenting the various subjects for consideration of the inhabitants, are from the very nature of the case general in their description, and are oftentimes inartificial in their construction. They are the mere abstracts or heads of the propositions which are to be laid before the inhabitants for their action; and matters incidental to and connected with such propositions are alike proper for their consideration and action. If it were otherwise, and the articles were to be the subject of a very critical analysis, much confusion and delay might ensue, and towns would be as often employed in discussing the construction of the articles of the warrant, as in the consideration of the subjects embraced in them.
Here, the vote was within the scope of the warrant article and was lawful.
V. Validity of the Vote Pursuant to G.L.c. 44, §33B
The Town also relies upon G.L.c. 44, §33B to argue that it was authorized to transfer $200,000.00 that was previously earmarked for other purposes to purchase the Property. In relevant part, G.L.c. 44, §33B states,
[a] town may, by majority vote at any meeting duly held, transfer any amount previously appropriated to any other use authorized by law. No approval other than that expressly provided herein shall be required for any transfer under the provisions of this section.
G.L.c. 44, §33B. The special town meeting was duly held and the vote to transfer previously appropriated funds for the purpose of forest land acquisition was a lawful vote under this section as well.
ORDER
For the foregoing reasons, plaintiffs’ motion for summary judgment is DENIED and defendant’s motion for summary judgment is ALLOWED.

The defendant filed its motion to dismiss subsequent to filing an answer. Additionally, the motion to dismiss refers to an affidavit of Town Administrator Norman MacNeill, which is outside of the pleadings. Accordingly, the defendant’s motion to dismiss will be treated as one for summary judgment, and disposed of as provided for in Rule 56. Mass.R.Civ.P. 12(b).

These funds are also known as “free cash” or “available funds.” They represent the balances of past appropriations.

The property had been designated as “forest land” pursuant to G.L.c. 61, §2, for real estate tax purposes. When a forest land owner notifies a town of his intent to sell or convert such land for other use, the Town is automatically granted a first refusal option.

“Proposition 2 1/2,” embodied in G.L.c. 59, 821C, provides, inter alia that the “total taxes within any city or town . . . shall not exceed two and one-half percent of the full and fair cost valuation ... in any fiscal year.”

Notice of a ballot question must be given to the Town Clerk at least thirty-five (35) days before the question will appear on the ballot. G.L.c. 54, §42C. In the case at hand, the Board of Selectmen were planning for the possibility that the voters at the special town meeting would vote to borrow funds for the purchase of the Property. Therefore, they notified the Town Clerk to place the Proposition 2 1/2 question on the ballot. There is no corresponding provision which allows a ballot question to be retracted within those thirty-five (35) days.

The parties do not argue, and the record does not reflect, that there were any other procedural flaws with respect to calling or conducting the special town meeting.