### CHARLES B. RAWSON *vs.* HENRY D. SPENCER.

The statutes abolishing school districts (Gen. Sts. *c.* 39, § 3; Sts. 1869, *cc.* 110, 423) are
not unconstitutional upon the ground that by them the property of the districts is taken
without compensation, or that the taxes to be imposed under them are not proportional
and reasonable, or that they impair the obligation of contracts.

Where assessors of taxes have jurisdiction of the subject matter of the tax, and no illegality
in the assessment appears upon the face of their warrant, the warrant is a justification of
the collector in serving it.

A notice under Gen. Sts. *c.* 12, § 8, of the sale of goods distrained for the payment of a tax,
described the goods distrained as "about eighteen thousand nine hundred and seven feet
of oak and walnut lumber, be the same more or less," and the place of sale as "near the
saw-mill of John S. Taft, in Uxbridge," and being dated "July 7, 1871," gave the time
of sale "on Wednesday the 12th day of July, at 2 o'clock P. M." In an action against
the collector of taxes for the conversion of the lumber : *Held,* that the notice in these re-
spects was sufficient.

TORT for the conversion of 18,907 feet of oak and walnut
lumber.

The defendant justified as collector of taxes for the town of
Uxbridge under a collector's warrant by which he was required
to levy and collect, among other sums, " the sum of twenty thou-
sand nine hundred and ninety-two dollars, it being the appraised
value of the property of the several school districts taken by the
town and assessed in accordance with the laws of this Common-
wealth and the vote of the town at said meeting, less such sum as
you are hereinafter authorized and required to deduct to certain
districts, whose debts do not equal the value of its property." He
was also required to pay to the town treasurer "fourteen thou-
sand three hundred and thirty-four dollars and sixty-three cents,
being the balance of the appraised value of the school property of
the several school districts, after deducting the sum of six thou-
sand six hundred and fifty-seven dollars and thirty-seven cents,

due to said districts for said property; which said sum of $14,334.63 you are to pay over to said Henry Capron, treas., as aforesaid, on or before the first day of March, A. D. 1871. And said sum of six thousand six hundred and fifty-seven dollars and thirty-seven cents you are to pay over to the tax-payers of the several school districts, whose names are in the accompanying list; and to each person his respective proportion of said sum as therein set down, excepting, however, the tax-payers of school districts No. (1) one and No. (11) eleven, who are not entitled to said payment. And you will make said payments to said tax-payers by deducting from each person's total tax committed to you, his respective share of said sum to be paid and remitted to said districts."

At the trial in the Superior Court, before *Dewey*, J., the plaintiff put in evidence the following article of a warrant calling a town meeting to be held July 27, 1869 : " Art. 2. To see if the town will vote to take possession of all the school-houses, lands, apparatus and other property owned and used by the several school districts and to appoint appraisers to appraise the same, under the provisions of chapters 110 and 423 of the acts of the Legislature of Massachusetts, passed at the session of 1869, and to pass any votes necessary to carry the same into effect."

The plaintiff also put in evidence the record of the proceedings of the town under this article as follows : " On motion of Francis Deane, Esq., voted, that the school committee of the town be authorized to take possession of the school district property under the provisions of the law in this behalf made and provided. Voted, that a committee of one from each school district be chosen to appraise the school-houses and property heretofore belonging to the several school districts in town, and report at an adjournment of this meeting, and this committee shall also ascertain the amount of any debt or debts due from any school districts and report the same at the adjournment." , " Chose the following persons [naming them] said committee." " At adjourned meeting;" " Voted, that the report of the committee chosen at the last meeting be accepted and adopted, and said committee are hereby discharged."

" The committee chosen to appraise the school district property in the town of Uxbridge met on the 16th inst., and organized by the choice of Samuel Taft for chairman, and Alvin Cook for secretary, and the committee, before entering upon the duties of their appointment, were sworn to the faithful discharge of that service by Francis Deane, Esq.

" The committee having attended to the business assigned them beg leave to submit the following appraisal. [Here followed an appraisal of the property of each district], making an aggregate of school district property in town of $20,992.00. [Here followed an enumeration of the indebtedness of various districts], making all the indebtedness of the school districts in town of $14,346.32.

" It was voted by the committee that the chairman and secretary make a report of their doings, sign the same, and present it to the town."

The plaintiff put in evidence the following article of a warrant calling a town meeting to be held on the first Monday of March, 1870: "Art. 6. To raise such sums of money as may be necessary to defray town charges for the ensuing year, and make appropriations for the same."

And the vote of the town thereon at the meeting held April 11, 1870, by adjournment from the first Monday of March: " Took up Art. 6. On motion of Geo. W. Hobbs, voted that the assessors be instructed to assess upon the whole town a sum equal to the appraised value of the school district property, and that they remit to the tax-payers of the districts their respective portions of said sum, after deducting the debts of their districts."

. It appeared that the defendant had sold the lumber after having given the following notice :

" Uxbridge, Mass., July 7, 1871. Distrained for the payment of taxes and will be sold at public auction near the saw-mill of John S. Taft, in Uxbridge, on Wednesday, the 12th day of July, at 2 o'clock P. M., unless said taxes shall be paid before the sale, about eighteen thousand nine hundred and seven feet of oak and walnut lumber, be the same more or less, which I have distrained to pay the taxes assessed against Charles B. Rawson of Uxbridge, for the year 1870, amounting to $211.28, together with the inter

est on the same and charges of said sale and expense of keeping the same. Terms cash. H. D. Spencer, collector for 1870."

There was no evidence that any other action except that set forth above was taken by the town to determine the amount of the debts of said several districts, or to authorize the assessors to assess the inhabitants for the value of the school district property, and to make the remittances named in the warrant to the tax-payers in the several school districts.

No evidence was offered tending to show that the several school districts were represented in the appraisal of their property or in the determination of the amount of their several debts, except what is contained in the records above quoted.

The plaintiff offered evidence tending to show that the assessors remitted to the several tax-payers in the several school districts in proportion to the valuation of the property of each tax-payer, and that one sixth of the said remittance was made on the polls.

The plaintiff asked the court to rule that the defendant could not justify his acts under the warrant:

" Because the statute of 1869, *c.* 110, and § 3 of chapter 39 of the General Statutes providing for the taking the property of school districts by towns, are unconstitutional and void:

" Because no lawful adjudication of the debts of the several districts was ever made:

" Because the assessors of 1870 had no lawful authority to assess the tax for the school district property named in the warrant:

" Because the assessors had no lawful authority to remit any sums to the tax-payers of the several school districts and to determine the balance to be paid by each inhabitant:

" Because if the manner of assessing the tax and making the remittance to the inhabitants of the several districts was determined by the vote of April 1870, it was erroneously determined."

The court declined so to rule, but reserving the determination of these questions and of the competency of the evidence as affecting the defendant, for the determination of this court, submitted

to the jury the questions as to whether the defendant had given the requisite notice of the sale of the property, and whether he had so mismanaged in relation to the sale as to render himself liable.

The plaintiff asked the court to rule that the notice of the sale by the defendant was insufficient in law, but the court declined so to rule, but did rule and instruct the jury, that if they were satisfied that the notice produced at the trial, or one like it, was posted up during the time required by law (which was stated to the jury), in a public place, in said town, it would authorize the jury to find that the defendant complied with the law as far as giving said notice was concerned; to which ruling the plaintiff excepted.

The jury found a verdict for the defendant.

If in the opinion of this court the proceedings of the inhabitants of Uxbridge and of their officers, as far as competent in the case, showed that the defendant was not justified thereby, or under his warrant, in distraining the property of the plaintiff, or if the notice given by the defendant was insufficient in law, then the verdict was to be set aside and a new trial ordered, otherwise judgment was to be entered on the verdict for the defendant.

*T. G. Kent*, for the plaintiff.

*P. E. Aldrich*, for the defendant, was not called upon.

COLT, J. The defendant justifies the seizure and sale of the plaintiff's property under a tax collector's warrant issued by the assessors of Uxbridge, which upon its face shows that the tax to be collected is in part made up of the sum assessed in accordance " with the laws of the Commonwealth and the vote of the town " to pay the appraised value of the property of the several school-districts taken by the town. The warrant also requires the collector to make allowance to the tax-payers of certain districts named, where the property of the district has been found to exceed the debts.

The provisions of the statutes for the abolition of the school district system require the taking possession by the town of all the property which the districts owned and could convey; the appraisal of the same; the levy of a tax on the town for the amount

of the appraisal ; the remittance to the tax-payers of each district of the appraised value of their district property less the amount of the debts due from the district; and lastly, the assumption by the town of all the district debts. Gen. Sts. *c.* 39, § 3. St. 1869, *c.* 110 ; *c.* 423, § 6.

The plaintiff contends that these provisions are unconstitutional because the property of the district is taken and appropriated by the town without compensation provided therefor, and because the taxes imposed therefor are unreasonable and not proportional, and because the obligation of contracts is thereby impaired.

These objections to the statutes are not well taken. The laws in question were enacted in the legitimate exercise of that power by which the Legislature may require the performance of certain public duties by different municipal or political agencies at its discretion. Before their enactment, school districts were indeed *quasi* corporations with the power to hold property, to raise money by taxation for the support of schools, and with certain defined public duties. But they were public and political as distinguished from private corporations, and their rights and powers were held at the will of the Legislature, to be modified or abolished as public welfare might require. The property held by them for public use was subject to such disposition in the promotion of the objects for which it was held, as the supreme legislative power might see fit to make. The laws in question do nothing more ; they provide for the transfer of public property and of a public duty connected with its use from one public corporation to another. In justice to those tax-payers in districts where the property transferred exceeds the debts, allowances are made intended to equalize as to such tax-payers the common burden. There is no attempt to provide compensation in the sense in which compensation is required when private property is taken for public use under the right of eminent domain. The right here exercised is quite distinct from that, and requires no provision for compensation. *Whitney* v. *Stow,* 111 Mass. 368. *Weymouth & Braintree Fire District* v. *County Commissioners,* 108 Mass. 142. *Waldron* v. *Lee,* 5 Pick. 323, 334. *Freeland* v. *Hastings,* 10 Allen, 570, 579, 580.

Nor do these statutes authorize taxation which under the bill of rights must be regarded as not reasonable and proportional. The benefits to be enjoyed from public improvements and the use of public property cannot be alike equal to all under any system. They are no more unequal under these laws than if districts had never existed or had not been abolished.

The obligation of contracts is not impaired. Some of the districts may be in debt, but the rights of the creditors are in no way prejudiced. The tax-payers of the district are sufficiently protected by the assumption of all these debts by the town. .

It is further insisted that even if no constitutional limitation has been invaded, yet the action of the town under these laws was so far illegal as to defeat the defendant's justification. Without discussing in detail the several objections taken to the regularity of the proceedings, it is a sufficient answer that the assessors had jurisdiction of the subject matter, and that there is nothing on the face of the warrant to show any illegality in the assessment. The defendant was not bound to examine into the legality of the previous proceedings, and cannot be affected by the existence of any fact not disclosed which deprived the assessors of jurisdiction in the particular case. *Sherman* v. *Torrey*, 99 Mass. 472. *Hubbard* v. *Garfield*, 102 Mass. 72.

The jury found that the notice of sale, which was given by the defendant after the seizure of the plaintiff's property, was posted as required by law. The essential requisites of a notice are contained in it. It is reasonably definite in fixing the time and place of the sale, and in its description of the property to be sold. *Barnard* v. *Graves*, 13 Met. 85, 87, 95.

*Judgment on the verdict.*