PETITION OF THE TOWN COUNCIL OF CRANSTON *et al.* for an Opinion of the Court.

Pub. Laws R. I. cap. 447, authorizing any town to abolish the school districts therein, and thereupon vesting the title to the district school property in the town, provides for an appraisal of the property so taken by the town by a commission to be appointed by the Supreme Court, and that "at the next annual assessment of taxes thereafter, a tax shall be levied upon the whole town

equal to the amount of said appraisal; and there shall be remitted to the tax-payers of each district their proportional share of the appraised value of the school property in such district."

*Held*, that the act does not violate the provision in Art. I. § 2, of the Constitution of R. I. which declares that "the burdens of the state ought to be fairly distributed among its citizens."

*Held*, further, that the assessment of the tax, deduction for debts, and remissions are required by the act to be made by the assessors of taxes, whose duty arises when the town has taken action under the act, and does not depend upon any vote of the town levying the tax.

Pub. Stat. R. I. cap. 43, § 6, provides that the assessment of taxes is not to begin until after the time given to the taxpayers for bringing in their accounts. Pub. Laws R. I. cap. 447, contemplates that the assessment of the special tax imposed thereby is to be made along with the general town tax, and hence the intention was to fix the time of making it at the beginning of the assessment. The words "next annual assessment" in the act mean, and are equivalent to saying, "when the assessors begin to make their next annual assessment."

The remission required by the act to be made, is to the individual taxpayers.

CASE STATED for an opinion of the court under the Judiciary Act, cap. 20, § 24, asking for a construction of Pub. Laws R. I. cap. 447[1]. The petitioners were the Town Coun-

---

[1] As follows:

SECTION 1. Any town may at any town meeting, the subject having been duly inserted in the warrant for said meeting, abolish all of the school districts therein; and forthwith all title and interest in all of the school houses, land, furniture, apparatus and other property which was vested in the several districts shall be vested in the town. The property so taken by the town shall be appraised by a commission of three disinterested persons to be appointed by the Supreme Court, and at the next annual assessment of taxes thereafter, a tax shall be levied upon the whole town equal to the amount of said appraisal; and there shall be remitted to the taxpayers of each district their proportional share of the appraised value of the school property in such district: provided that if any district be in debt, and said debt be assumed by the town, the amount of said debt shall be deducted from the whole amount to be remitted to the taxpayers of said district. If, however, the parties in interest prefer, the differences in the value of the property of the several districts may be adjusted in such manner as they may agree upon.

SEC. 2. Upon the abolition or discontinuance of any district, its corporate powers and liabilities shall continue and remain so far as may be necessary for the enforcement of its rights and duties.

SEC. 3. When a town shall abolish the school districts therein, the entire control, management and care of all the public school interests of the town shall be vested in the school committee of that town, and the number of the school committee in any town abolishing the district system may be, by vote of the town, increased to a number not exceeding seven.

SEC. 4. All acts and parts of acts inconsistent with this act are hereby repealed; and this act shall take effect on and after its passage.

cil, the Assessors of Taxes, School District No. 6, and several taxpayers of the town of Cranston.

*December* 9, 1893.  Stiness, J.  In April, 1892, the town of Cranston voted to abolish the school district system and to adopt the town system.  Thereupon, pursuant to Public Laws, cap. 447, the title to all the school property vested in the town, subject to an appraisal to be made by a commission to be appointed by this court.  The act provides for the payment of such property as follows:  " At the next annual assessment of taxes thereafter, a tax shall be levied upon the whole town equal to the amount of said appraisal; and there shall be remitted to the taxpayers of each district their proportional share of the appraised value of the school property in such district ; provided that if any district be in debt, and said debt be assumed by the town, the amount of such debt shall be deducted from the whole amount to be remitted to the taxpayers of said district."   A commission was appointed and a report made, which was confirmed September 12, 1893. Upon these facts the following questions are presented to the court for an opinion :

1.  " Is so much of section 1 of said chapter 447 of the Public Laws as requires that ' At the next annual assessment of taxes thereafter, a tax shall be levied upon the whole town equal to the amount of the said appraisal ; and there shall be remitted to the taxpayers of each district their proportional share of the appraised value of the school property in such district,' constitutional ?"

It is suggested that the statute violates the provision in Art. I. § 2, of the Constitution, that "the burdens of the state ought to be fairly distributed among its citizens."  The argument is, that taxation is a public burden; that the statute provides for a tax for other than a public purpose ; and that it is oppressive and unequal in that it does not apply to the district taxed ; or, in other words, that the citizens of one district, having a small school property, are taxed for the benefit of other districts having more school property.  We do not think the statute is open to the objection of unconstitutionality.  School districts have been recognized by this

court as *quasi* corporations. *Bull* v. *School Committee*, 11 R. I. 244. As such corporations they are respectively the owners of their school houses. Under the act these were to become the property of the town, and to be paid for by the town by way of a proportionate remission of tax. It is true that the taxpayers in a particular district may not, at the present time, be the same persons who paid the tax from which a school house was built ; and yet it is fair to presume that purchasers of property have indirectly paid for the same in an enhanced value of land and property by reason of the erection of a school house within the district ; and they are the present corporators of the district.

The apportionment may not be absolutely just, but it is evidently as nearly so as practicable. The remission provided for is not a tax raised for the benefit of individuals, but in payment of property which is virtually purchased by the town. Neither is it a tax for the benefit of one part of the town at the expense of another part, for school houses are for the benefit of all and not for a part. Some sections may have required and built larger and more expensive buildings than others, but this may be so under direct taxes to build school houses, and surely no one can question the right of a town to do the same thing. The increased expense in such cases is usually offset by the increased number and amount of contributing taxes. The compensation for the more costly buildings under this act is therefore as nearly equitable as it can be made. The tax and remission is virtually a tax paid into the town for the school houses purchased and paid back again to the members of the respective school districts in proportion to their interest in the same.

But here comes the objection that, because none of the money goes into the town treasury, it is a tax for the benefit of individuals and not a tax for a public purpose. This objection was disposed of *In the Matter of Dorrance Street,* 4 R. I. 230, 243, where the court says : "Certainly, it proaches very near an absurdity, if he (an owner of land) constitutionally liable, on the one hand, to pay a sum of money to the public for the benefits he has received from the

improvement, and the public is constitutionally liable, on the other hand, to pay him in money for the damages which he has sustained by the improvement, to say that he is constitutionally wronged, because in such a case the public, instead of clumsily collecting the money due from him, and putting it into the treasury with one of its numerous hands, and then taking it out again and paying him for his damages with another of its numerous hands,—pays him the balance due him, if his damages exceed his benefits, or exacts from him the balance due to them, if his benefits exceed his damages. It is a mere mistaking of words for' things to say, in such case, that he is compensated contrary to one clause of the constitution, by benefits instead of money,—if under the general power of the government, and in accordance with the spirit of another clause of the same constitution, he is liable to pay money for those benefits." There is no difference in principle between that case and the case at bar. Here all the taxpayers would be liable to pay for school houses built or purchased by the town, and, as members of the school district, the act recognizes that some payment should be made by the town for the property taken from the districts. This much certainly is equitable and within the general principles of taxation. It is not compensation in the strict sense of the term, as when private property is taken, although it resembles that. It is rather an attempted equalization as between the taxpayers of the town, as members of one corporation, and the taxpayers of the districts, as members of other corporations ; and we fail to see that the adjustment of debit and credit is not fair and reasonable. A similar statute has been sustained in Massachusetts. *Whitney* v. *Stow*, 111 Mass. 368 ; *Rawson* v. *Spencer*, 113 Mass. 40. The case of *Freeland* v. *Hastings*, 10 Allen, 570, is similar in principle.

The cases cited by counsel opposed to this view stand upon very different grounds. In *Hanson* v. *Vernon*, 27 Ia. 28, it was held that an act to enable towns and cities to aid in the construction of railroads was not a legitimate exercise of the taxing power. *Hooper* v. *Emery*, 14 Me. 375, related to

money received from the United States Government, which it was proposed to divide among inhabitants of a town according to families. *Allen* v. *Jay*, 60 Me. 124, denied the power of a town to loan its credit to individuals for manufacturing purposes. In *Lowell* v. *Boston*, 111 Mass. 454, the city of Boston proposed to issue bonds to loan the proceeds on mortgages to sufferers by the fire of 1872. In *Bright* v. *McCullough*, 27 Ind. 223, a tax for road purposes assessed on real estate only, was held to be repugnant to the constitution which required taxation of all property both real and personal. *In re Flatbush*, 60 N. Y. 398, held that the city of Brooklyn could not tax land in Flatbush for the extension of Prospect Park in Brooklyn. The remarks of judges in these cases are quite appropriate to the case decided, but we fail to see any principles pointed out which would show that the act before us is contrary to the provisions of the constitution.

2. "Does chapter 447 give the collector of taxes power under the appraisal made, to compute, collect and remit without any act on the part of the assessors?"

We think the act clearly implies that the assessment, deduction for debts and remission are to be made by the assessors at the same time as the annual assessment.

3. "Is it the duty of the assessors to assess the amount of the appraised value of the district school property until the voters of the town in town meeting have levied, ordered or voted such amount as a tax?"

We think it is. The act of the General Assembly is superior to the vote of a town, and commands the assessment when the town has taken action under it. Of course the more orderly way would be for the town to vote the tax; but an omission to do so would not defeat the operation of the law which imposes it.

4. "If a vote of the electors of the town in town meeting is necessary before the amount of such appraised value can be assessed by the assessors, can such tax be levied, ordered or voted at a special town meeting called for the purpose at any time, or must it be levied, ordered or voted at the annual

town meeting to be holden next after the commissioners' report has been confirmed by the court?"

5. "Can the amount of such appraised value be assessed by the assessors prior to the levy and assessment of the next annual tax, whether levied, ordered or voted by the electors of the town or not, without such proceedings being had as are prescribed by sections 6, 7 and 8 of chapter 43 of the Public Statutes?"

These two questions may be answered together. Strictly, the assessment is not fully made until the list is completed and delivered by the assessors. But Pub. Stat. R. I. cap. 43, § 6[1], provides, that the assessment is not to begin until after the time given to the taxpayers for bringing in their accounts. We think the statute contemplates that the assessment of this special tax is to be made along with the general tax, and hence that the intention was to fix the time of making it at the beginning of the assessment. It would be unreasonable to suppose, if, as in this case, a report should be made after the assessment list had been practically completed but before it had been delivered, that the assessors must do the work all over again, and thus delay the collection of the tax. We think the "next annual assessment" means, and is equivalent to saying, "when the assessors begin to make their next annual assessment." There might, therefore, be an interval after the annual town meeting, within which a special meeting could be held, but it should be at a time to allow for the bringing in of lists by taxpayers as provided in said section 6.

6. "Are these amounts *remitted* to be deducted from the taxes of the individual taxpayers, or are they payable to the

---

[1] As follows :

Sec. 6. Before assessing any tax, the assessors shall post up printed notices of the time and place of their meeting, in three public places in the town, for three weeks next preceding the time of such meeting, and advertise in some newspaper published in the town, if any there be, for the same space of time. Such notices shall require every person and body corporate liable to taxation to bring in to the assessors a true and exact account of all his ratable estate, describing and specifying the value of every parcel of his real and personal estate, at such time as they may prescribe.

treasurer of each school district as a fund from which to pay and cancel debts and obligations of the respective districts?"

The act clearly provides for a remission to taxpayers, which means, we think, the individual taxpayers. There is no provision for the proportionate amount of any district to go to its treasurer for any purpose. The liability of a district for debts continues, notwithstanding such remission, although the act presupposes an assumption of district debts by the town and the retention of an amount sufficient to cancel them, thus saving the trouble of proceedings against the district or of an assessment and collection of a special district tax to pay its debts.

*George B. Barrows*, for Assessors of Taxes.

*Stephen A. Cooke, Louis L. Angell & John Palmer* for the other petitioners.