JOHN SKELLY ET UX. *vs.* THE MONTVILLE STREET RAILWAY COMPANY.

*First Judicial District, Hartford, January Term, 1896. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The Street Railway Act of 1893 (Public Acts of 1893, p. 307), which prohibits any street railway from extending its tracks from one town to another so as to parallel a steam railroad until it shall have applied for and obtained a judicial finding that public convenience and necessity require the construction of such extension, applies to an extension authorized by a subsequent amendment to a street railway charter, unless an intention to except such extension from the operation of the general Act clearly appears in the amendment.

[Submitted on briefs January 10th—decided February 7th, 1896.]

SUIT for an injunction to restrain the defendant from constructing and maintaining its street railway in the public highways, so as to parallel a certain steam railway, until it should have obtained from the Superior Court or a judge thereof, a finding that public convenience and necessity required such construction ; brought to the Superior Court in New London County and reserved by that court, *Prentice, J.,* upon the defendant's demurrer to the complaint, for the advice of this court. *Judgment overruling demurrer advised.*

The complaint, after reciting the incorporation of the defendant under a special charter granted by the legislature in 1889, proceeds as follows :—

* Transferred from second judicial district.

"2. The General Assembly of the State of Connecticut, at its January session, 1895, passed an Act amending the charter of said company, which amendment had been accepted by said company and a certificate of acceptance filed with the Secretary of State, and said amendment is as follows : 'Section 2. Said company is hereby authorized to lay down, construct, keep and maintain the tracks of said company with the necessary turnouts, switches and side tracks and run its cars over the same through the street known as the Norwich and New London turnpike road to such a point in a southerly direction in the town of Waterford and to such a point in a northerly direction in the town of Montville as may be determined by the selectmen of the respective towns. . . Section 4. Said company shall have the same right to lay down, construct, keep and maintain its tracks and necessary turnouts and to run its cars over the same in the town of Norwich as far northerly as the city line of the city of Norwich, with the approval of the selectmen of the town of Norwich, that The Norwich Street Railway Company now has ; *provided*, said Norwich Street Railway Company shall release its said rights to said Montville Street Railway Company, and said release shall be recorded in the town of Norwich.'

"3. The Norwich Street Railway Company at the time of the approval of said amendment to the charter of the Montville Street Railway Company had the right to lay down, construct and maintain its tracks and necessary turnouts and switches and to run its cars over the same from the said city line of said city in said public highway as far southerly as the boundary line between the town of Norwich and the town of Montville.

"4. The said Norwich Street Railway Company has released all its rights to the said Montville Street Railway Company, which release has been recorded in the town records of the town of Norwich."

The complaint then alleged compliance with the provisions of the foregoing amendments, and the approval by the selectmen of the plans submitted, and continued as follows:—

"11. Said street railway will parallel the said New London

Northern Railroad Company's steam railway the whole distance between the city of Norwich and the city of New London at a distance therefrom varying from one quarter of a mile to a mile and one half.

"12. The plaintiff Mary E. Skelly, is the owner of a tract of land on the easterly side of said public highway in the town of Norwich and the land covered by said public highway to the center line thereof, subject to the right of the public as a public highway, in which it is proposed by said Montville Street Railway Company to lay down, construct and maintain its tracks as aforesaid from the town of Norwich to and into the town of Montville, and to build a turnout in said street on land owned by her as aforesaid, to the great damage of said plaintiff and for which she has no adequate remedy at law."

The defendant demurred to the complaint, upon the ground that the amendments to its charter were passed and took effect after the passage of the Act of 1893, and that by virtue of such amendments the defendant had the right to construct its track from the city of Norwich to the town of New London in the highway mentioned in the complaint, without making any application to the Superior Court or a judge thereof, to ascertain whether public convenience and necessity required the construction of a street railway which would parallel a steam railway.

At the request of the parties, the Superior Court reserved the questions of law arising upon the pleadings, for the consideration and advice of this court.

*Joseph T. Fanning*, for the plaintiffs.

*Soloman Lucas*, for the defendant.

HAMERSLEY, J. One question only is presented by the demurrer: Do the amendments to the defendant's charter, passed since the Act of 1893 (Public Acts of 1893, p. 307), except the defendant from the operation of § 8 of that Act? This section forbids the extension of a street railroad from

one town to any other town in the public highway, so as to parallel any steam railroad, (unless authorized by special charter prior to January 1st, 1893,) until the Superior Court, upon application in the prescribed form, has found that public convenience and necessity require the construction of such street railway. The Act took effect on its passage, June 1st. ·The first amendment to the defendant's charter was passed by the same legislature, and took effect June 21st. Section 2 of that amendment provided : " Said company is hereby authorized to lay down, construct, keep, and maintain the tracks of said company . . . . and run its cars over the same through the street known as the Norwich and New London turnpike road, to such a point in a southerly direction in the town of Waterford, and in a northerly direction in the town of Montville, as may be determined by the selectmen of the respective towns." The towns of Waterford and Montville separate the town of New London from the town of Norwich.

We think this amendment did not repeal the general Act passed June 1st, by excepting the defendant from its operation. Section 8 of that Act, by its terms, did not apply to the extension of railways in pursuance of authority by special charter granted prior to January 1st, 1893 ; reference to the acts of that session shows that no authority to construct such railways was granted between January 1st and June 1st, 1893, when the Act took effect; unless the Act applied to railways whose construction should be authorized subsequent to its passage, it was wholly inoperative. The Act must, therefore, be held to enact that no street railway whose extension is hereafter authorized by special charter, shall be extended from one town to another so as to parallel a steam railroad, until application has been made as provided. The provisions of any subsequent special charter, or amendment to such charter (for the word charter as used includes both), may repeal this Act; but every subsequent charter is passed and accepted and must be construed, in view of the existence of the general law enacted with reference to such charters. The maxim that later statutes abrogate prior con-

trary statutes, does not justify a repeal by implication unless the later statute is couched in negative terms, or its provisions are so clearly repugnant to the former Act that it necessarily implies a negative. "If both statutes can be reconciled, they must stand and have a concurrent operation." *Goodman* v. *Jewett*, 24 Conn., 588, 589; *Norwich* v. *Story*, 25 id., 44, 47; *Kallahan* v. *Osborne*, 37 id., 488, 490. Here there is no repealing clause; the charter amendment does not in terms negative the general Act; and only by a strained construction can any repugnancy be discovered between the two. In order that the Act of 1893 may operate at all, the legislature must grant the franchise to extend the railway, and must to that extent pass upon the question of public convenience and necessity; but the franchise is granted subject to a *quasi* judicial finding on that question in view of the existence of a parallel steam railroad.

The provisions of the amendment modifying the franchise granted, by leaving the limits of the authorized extension to be determined by the selectmen of the respective towns, have no natural and no real application to the finding required by the general Act. They simply give the selectmen of each town the power to determine how much of the town highway may be occupied by the railroad. The exercise of this power depends on the discretion of the selectmen, and not on any finding as to public convenience and necessity, either generally or in view of an existing parallel road. It is a limitation, not an extension of the granted franchise.

The other amendment to the defendant's charter, passed in 1895, has no different effect. That amendment includes provisions authorizing the defendant to extend its road northerly in the town of Norwich to the city of Norwich, with the approval of the selectmen of Norwich, and upon obtaining a release of the rights then belonging to the Norwich Street Railway Company. The provisions of § 2 of the amendment of 1893, which had not been acted on by the defendant, are repeated in the amendment of 1895, and have the same meaning.

The amendment of 1895 gave the defendant powers in

addition to, but closely connected with, those given it by the amendment of 1893; it was natural in giving these powers that the provisions of 1893 should be incorporated in the new amendment, and the old amendment be repealed. We see no force in the defendant's suggestion that such action might indicate an intent to repeal the general Act; but if so, the intent has not been expressed.

The fact that the legislature of 1895 granted some special charters for street railways containing a clause that the charter was subject to the general laws relating to street railways, and others without that clause, has no significance. All such charters were granted subject to § 8 of the Act of 1893, unless the terms of the charter or special provisions repugnant to the operation of the general law expressed an exception.

The Superior Court is advised to overrule the demurrer.

In this opinion the other judges concurred.