THE SECOND SCHOOL DISTRICT OF THE TOWN OF GLASTONBURY *vs.* THE TOWN OF GLASTONBURY.

First Judicial District, Hartford, January Term, 1913.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

Chapter 146 of the Public Acts of 1909, which took effect on July 15th of that year, required towns to assume the management and control of their district schools and also to take over their property and indebtedness. Section 7 of the Act provided that the assessors of each town should appraise the property of each school district therein on or before September 30th, 1909, and that the town, at its next annual meeting after the Act took effect, should levy an

Second School District v. Glastonbury.

"equalization tax" upon its grand list sufficient to raise, in the combined districts, an amount equal to the value of their property less their indebtedness; and that thereupon a sum equal to the appraised value of the school property in each district, less its indebtedness, should be abated to the taxpayers of such district in proportion to the amount of their respective lists. It further provided that any school district might elect to retain and be alone responsible for its own indebtedness or any stated portion thereof, in which case such indebtedness should not be deducted from the appraised value of its property in determining the amount of the aforesaid abatement. The plaintiff district, which owned property appraised, in September, 1909, at $15,500, and was indebted to the amount of $15,152, voted that its entire debt devolve upon the town; while the defendant town voted in November, 1909, not to assume any debt contracted by any school district before July 15th, 1909. The defendant refused to lay an equalization tax and the plaintiff by this suit sought to compel it to do so, or to return, or pay for, the school district property. Held:—

1. That the object of the tax was not to raise money to pay the indebtedness assumed, but, as its name implied, to equalize, between the different districts and in proportion to their respective grand lists, the amount in property and taxes taken from each by the town.

2. That the town, in its corporate capacity, had no interest in the appraisal of the school district property but only in the amount of its indebtedness; and therefore was in no position to assail the statute upon the ground that it did not provide for a hearing of interested persons by the assessors before appraising the property.

3. That as none of the defendant's property was being taken there was no ground for its claim that it was being deprived of its property without due process of law.

4. That the defendant should have laid the equalization tax as the statute prescribed; and its failure to do so at the time specified in the statute was no excuse for its refusal to lay it now.

5. That the tax should be laid upon the last completed grand list of the town.

Argued January 10th—decided April 17th, 1913.

SUIT to compel the defendant to lay an equalization tax in the manner prescribed by chapter 146 of the Public Acts of 1909, relating to the town management of public schools, or to pay the plaintiff the just and true value of its school property, possession of which the town was alleged to have taken, or for other relief,

brought to and reserved by the Superior Court in Hartford County, *Ralph Wheeler, J.*, upon a finding of facts, for the advice of this court. *Judgment advised for plaintiff.*

By the Act in question (Public Acts of 1909, chapter 146, p. 1070) certain school property, consisting of a schoolhouse and the lot on which it stands, and all the furniture, equipment and apparatus of the school therein contained, all of the value of $15,500, became vested in the defendant town, and it has taken possession of and occupies the same, and is using it for school purposes.

Section 7 of the Act, so far as it concerns this action, reads as follows: "All property heretofore held by school districts shall vest in the towns in which such districts are situated, to be held by such towns for school purposes. All debts, obligations, or pecuniary trusts of any school district, existing at the time of the passage of this act, shall remain in force against the town in which such district was situated, and shall be paid and performed by such town, except as hereinafter provided. The assessors of each town shall, on or before the thirtieth day of September, 1909, appraise the property of each school district within its limits. At the next annual town meeting after the passage of this act, an equalization tax shall be levied upon the grand list of the town, equivalent to such a tax as would, in all districts of the town combined, raise an amount of money equal to the value of the property owned by such districts, less their indebtedness, and there shall then be abated to the taxpayers of each district so many mills of such equalization tax rate as upon that part of the grand list of the town taxable within such district would yield an amount of money equal to the appraised value of its property less the amount of indebtedness of the district. Any district shall have power to determine that any

stated amount of its indebtedness shall not be devolved upon the town, but shall be owed by such district exclusively, as heretofore, and any town shall have this same power regarding the indebtedness of any district situated within its limits; provided, that, if action is taken both by the town and by the district having such indebtedness, the vote stating the larger amount of indebtedness to be separately retained by the district and not devolved upon the town shall determine such amount; and provided, further, that this amount of indebtedness thus separately retained by the district shall not be deducted from the appraised value of its property in fixing the amount of the equalization tax to be abated for its taxpayers. Every school district shall remain separately and solely liable for any indebtedness or liability by it incurred previously to September 1, 1909, unless the amount of such liability or indebtedness shall be deducted, as aforesaid, from the appraised value of its property in fixing the amount of the equalization tax to be abated for its taxpayers. . . ."

Pursuant to the provisions of the Act, the assessors of the town in September, 1909, appraised said school property at $15,500. At the time when this property was taken by the defendant the plaintiff was indebted, by its notes, to the amount of $15,152.50, for money borrowed with which to erect the school-building. The district voted that its entire debt devolve upon the town. The town voted, on November 27th, 1909, "that any debt contracted by any school district in the town of Glastonbury previous to July 15, 1909, be not assumed by the town." No equalization tax was laid by the town at its next annual meeting after the passage of the Act in question, and the town will refuse to lay such tax unless ordered so to do by the court. The remaining school districts in the town have continued

responsible for their debts, and have made no request that the town pay the same, and none of them has taken any action to enforce an equalization tax, or to collect from the town any of the indebtedness of such district.

*William F. Henney,* for the plaintiff.

*Stewart N. Dunning* and *Henry H. Hunt,* for the defendant.

THAYER, J. The purpose of the statute under which the plaintiff's school property was vested in the defendant, was to abolish school districts in certain towns and place the management of all the schools in the hands of the town, which, for that purpose, is made a school district. Its effect is to enlarge the boundaries of the different districts so as to make them correspond with those of the town. It is a general law, applying to all towns in the State except those which have a city or borough, or a district organized under a special act of the legislature, within their limits, and except those towns which have voted to abolish school districts and assume the control of the schools.

By thus consolidating all of the districts into a single district, the enlarged district became possessed of the school property of all the old districts, and became bound to manage, and assume the expense of managing, all the schools. Section 7, out of which the present controversy arises, provides for the payment of the debts and obligations of the districts. After providing, in the earlier part of the section, that the town shall pay these debts except as thereafter provided, it proceeds to provide for what is called an "equalization tax." This tax does not purport to be laid for the purpose of paying the indebtedness which the town

assumes to pay for the different districts. The sum to be raised is not the amount of such indebtedness, but the value of the property received less the amount of such indebtedness. It may be much more than the total indebtedness, and it may be less, depending upon the value of the property and the amount of the indebtedness of the different districts. Presumably the total property taken will exceed the indebtedness; but fires or other disasters in a particular town might create a situation not contemplated by the statute. Nor does the statute contemplate that the town will, upon this levy, collect the full tax laid, for the taxpayers in the several districts are allowed an abatement which in effect is the amount by which the appraised value of the property taken from the district exceeds its indebtedness.

The purpose of the tax is, as its name implies, equalization, to equalize as between the different districts, in proportion to their grand lists, the amount in property and taxes taken from each by the town. If the amount thus received is not sufficient to pay all the indebtedness assumed by the town, the difference must be raised later by a new levy upon all the taxpayers in the town in the usual manner of raising money by taxation.

The defendant, therefore, as a corporate body, has no interest in the valuation of the school property. For that reason, doubtless, the appraisal was left to its own officers chosen to appraise and assess all of the taxable property in town, and already chosen at the time the Act was passed and the property taken over. It is the amount of the indebtedness in which the town is interested, and it has adequate means of raising the necessary amount if the equalization tax fails to produce sufficient. Whether the appraisal of the school properties was too great or too small does not affect the

defendant. In the case before us the court has found that the plaintiff's property was properly appraised, its value being the amount of the appraisal, $15,500. It is unnecessary, therefore, to inquire whether it was, as claimed by the defendant, improper to leave the appraisal of the school property to the assessors of the town without providing for a hearing by the parties interested, because the defendant is not an interested party. And as none of the defendant's property is being taken, there is no ground for its claim that it is being deprived of its property without due process of law.

It was the defendant's duty to have levied this equalization tax as the statute required. It is claimed in behalf of the defendant that, having neglected its duty to levy the tax at its next town meeting after the statute was passed, it cannot now levy such a tax because property has changed hands, new buildings have been erected, and no provision is made in the Act for laying the tax at any other time than at the annual town meeting for 1909 upon the grand list for that year. The statute does not prescribe that the levy shall be upon the grand list of 1909. For aught that appears it might have been laid upon the last completed grand list as well as upon that of 1909. The law made it mandatory upon the town to pay the indebtedness of the districts, and provided a way. The defendant cannot be heard to say that because it neglected its duty at the time prescribed for its performance it is now excused from performance. A levy upon the last grand list, or upon the next one, will answer the purposes of the statute.

The plaintiff district having never determined that any stated amount of its indebtedness shall be owed by it exclusively and shall not be devolved upon the town, this is not a case where both the district and town

have acted in fixing such stated amounts. The plaintiff, therefore, is not precluded by the votes of the town from bringing this action.

The Superior Court is advised to grant the plaintiff's first prayer for relief, directing that the equalization tax be levied upon the last completed grand list of the town.

No costs in favor of either party will be taxed in this court.

In this opinion the other judges concurred, except HALL, C. J., who concurred in the result, but died before the opinion was written.