ARSENAL SCHOOL DISTRICT ET AL. *vs.* CONSOLIDATED TOWN AND CITY OF HARTFORD ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued June 7th—decided August 3d, 1935.

*William H. Blodgett,* with whom was *Howard E. Hausman,* for Arsenal School District and Second North School District.

*Barclay Robinson,* with whom was *Franz J. Carlson* and *David Levy,* for Consolidated Town and City of

Hartford, Washington School District and West Middle School District.

*John Buckley,* with whom, on the brief, was *Alexander W. Creedon,* appeared for South School District and Southwest School District.

*Nicholas F. Rago,* appeared for Arsenal School District.

*William F. Vail* and *Vincent W. Dennis,* appeared for Second North School District.

*Joseph P. Cooney,* appeared for the First School District.

HINMAN, J. The facts herein stated are stipulated by the parties for the purpose of this reservation or otherwise appear of record. In 1916, 1921, 1922 and 1923, pursuant to authority of previous legislation hereinafter referred to, the voters of the city and town of Hartford voted upon a proposal to consolidate the school districts within the city, but in each instance the proposition was defeated. In 1929 the General Assembly passed a special act (20 Special Laws, p. 859) entitled "An Act amending an Act establishing a Board of Education in the City of Hartford," the first section of which reads as follows: "On the first day of July following the acceptance of this act, by vote at a city meeting duly called to consider and act thereon, the property and assets of all the school districts having local limits within the town and city of Hartford, including taxes levied but not collected, shall pass to and be vested in said city of Hartford, and on said date said city shall assume the payment of all indebtedness of every name and nature, of such districts. On and after July first, the board of education

of said city of Hartford shall have all the powers and perform all the duties of district committees of school districts within said town and city, of the high school committee of the town of Hartford and of the board of education. Nothing herein shall be construed as barring the collection of school district taxes due on said July first." It further specified in succeeding sections certain powers and duties for the board of education and provided that no powers of school districts or any officer thereof shall be exercised after the taking effect of consolidation, except that every district "may preserve its organization and necessary powers for the purpose of closing and settling up its affairs." The final section (5) provided that "This act shall be valid and effective when approved by a majority of the voters casting their ballots upon the question of school consolidation."

The warrant for a city meeting and election to be held on November 5th, 1929, contained provision for a vote upon the acceptance of the act, those who favored the acceptance to place the pointer on the voting machine at the words "Consolidation of School Districts— Yes," and those who opposed at the words "Consolidation of School Districts—No." The vote resulted: Yes, 11,991, No, 14,495. The warrant for a city meeting and election held November 7th, 1933, again contained a clause providing for a vote "upon the approval or disapproval of a proposition of the consolidation of the school districts . . . in accordance with plans fully described and set forth in the acts of the General Assembly relating thereto," those favoring consolidation to place the pointer at the words "Consolidation of School Districts—Yes," and those opposed at the words "Consolidation of School Districts —No." The warrant also contained a clause providing for a vote upon the acceptance of the act of 1929,

those favoring acceptance to place the pointer at the words "Acceptance of an Act amending an Act establishing a Board of Education in the City of Hartford in Connection with School Consolidation—Yes," and those opposed to place the pointer at "No." The result of the votes on these two questions was Consolidation—Yes, 14,266, No, 11,186; Acceptance—Yes, 11,468, No, 7,358.

The complaint sets forth the facts above stated in substance concerning the votes taken at the meeting of November 7th, 1933, alleges that the amount of net assets above liabilities as compared with the grand list of the plaintiff school district is greater than the amount of the net assets above liabilities, as compared with the grand list, of the average of all the school districts in the consolidated town and city, and that there are substantial questions and issues in dispute which require settlement between the parties as to their rights, powers, duties and liabilities in the premises, in particular as to the right of the plaintiff school district, and the taxpayers thereof, to an equalization of their property rights under § 257b, Cum. Sup., General Statutes, and prays for a declaratory judgment: (a) that the Act of 1929 is not in effect; (b) that the provisions of the General Statutes relating to consolidation are applicable; (c) that so much of § 257b as provides for equalization of property rights of consolidated school districts is consistent with the Special Act and is applicable; (d) that it is the duty of the officers of the city as specified thereby to appraise the property of the school districts as required by § 257b, and (e) of the city to lay a tax as therein provided unless the parties in interest shall agree upon a basis of adjustment of the difference in the value of the property of the several districts in

some other manner. Section 257b, Cum. Sup., General Statutes, is set forth in a footnote.

The consolidated town and city of Hartford and all of the school districts therein except the plaintiff district were made defendants. Two of the districts defaulted; each of three alleged in its answer that its net assets above liabilities, as compared with its grand list, were greater than the average of all the school districts, and joined the plaintiffs in requesting the declaratory judgment prayed for; the town and city and two of the districts claimed that the Special Act of 1929 is in effect, that the provisions of the General Statutes relating to school consolidation, including § 275b, are not applicable to the consolidation in Hartford, and that, therefore, no appraisal of property of the districts and laying of a tax for the purpose of adjustment of property values is required.

The questions reserved are as follows: (1) Did the Special Act of 1929 become valid and effective by virtue of either or both of the votes taken at the meeting

Sec. 257b. CONSOLIDATION. PROPERTY ADJUSTMENTS. APPRAISALS. Such towns shall assume the property and be responsible for the debts of the districts within their respective limits. Such property shall be appraised as hereinafter provided and the amount of the debts ascertained. The appraised value of such property may be raised by a tax to be laid by the town on its grand list next completed; and, if such tax shall be raised, the taxpayers in each of the districts previously existing shall be paid or credited on the rate bill with their respective proportions of any excess of the property of such district over and above its liabilities, as ascertained by the town; or the difference in the value of the property of the several districts may be adjusted in any other manner agreed upon by the parties in interest. Permanent funds vested in any district previously existing for school purposes shall be placed in charge of the treasurer of the town, and all such funds vested in the town shall remain in charge of the treasurer of the town. Such appraisal of property shall be made by a committee consisting of the first selectman, one member of the board of education to be selected by such board and one member of the board of assessors of the town to be selected by such board.

held November 7th, 1933? (2) Has consolidation of the school districts of the town and city of Hartford been accomplished under the provisions of that Act? (3) Has consolidation been accomplished under the provisions of the General Statutes? (4) If the Special Act became valid and effective, must there be an adjustment of the property values of the districts under the provisions of § 257b? (5) If the Special Act did not become valid and effective, must there be an adjustment under the provisions of § 257b? (6) Is so much of § 257b as provides for the equalization of property rights applicable to consolidation in Hartford? (7) Is it the duty of the proper officers of the town and city of Hartford to proceed to accomplish an equalization of the property rights of the several school districts as provided by the General Statutes, particularly in § 257b, Cum. Sup.?

The first question to be determined is, Did the Special Act of 1929 become valid and effective by virtue of either or both of the votes taken at the city meeting held November 7th, 1933? The plaintiffs claim that the act has not been "approved by a majority of the voters casting their ballots upon the question of school consolidation" as required by § 5 and therefore has not become effective. Clearly the gist and primary purpose of this special act was the consolidation of the school districts within the town and city of Hartford, the other provisions being designed to meet local conditions pertaining to school management which would result from consolidation and to which the corresponding provisions of the General Statutes, not being fully adapted thereto, would be to some extent inappropriate. The question to be submitted to the voters, pursuant thereto, was whether they would approve or disapprove consolidation as therein provided for and the clause in the warrant presenting to them an oppor-

tunity to vote yes or no upon that proposition was manifestly appropriate and clearly as contemplated by the provisions of § 5. In our opinion, also, this was the only question which the act, including that section, required or intended to be submitted. As we read the section in the light of its purpose, the action intended to be decisive of the taking effect of the act was approval, by a majority of those casting their ballots on the question, of school consolidation. The further clause in the warrant submitting, specifically, the question of acceptance of the act, and the vote taken thereon were at least unnecessary and superfluous, and any result of voting upon it was subsidiary to the vote on the main question and of no effect, as against the significance of the latter vote, upon the taking effect of the act and the accomplishment of its purpose. The test provided for was in the nature of a referendum to ascertain whether or not a majority of those voting on the proposition accepted and approved consolidation as proposed and provided for by the act, and the intention is manifest enough, notwithstanding the somewhat inartificial wording of the section, that approval by such a majority should carry with it, automatically, approval of the act effectuating it. Our answer to this question, therefore, is "Yes."

The answers to the second and third questions follow from this conclusion, which carries with it the result that consolidation has been accomplished under the provisions of the special act rather than under the general law. We may add, however, that in view of the conclusions at which we arrive, as hereinafter stated, as to the necessity of adjustment of the property values of the districts pursuant to General Statutes, Cum. Sup. § 257b, these questions are immaterial to the main issue presented by the reservation. We do not understand any party to question that consoli-

dation is an accomplished fact, if not under the special act, then under the general law, the submission and manner thereof being sufficient to satisfy the requirements of the General Statutes. Section 958 and Cum. Sup. § 255b. If it were accomplished in the latter manner, clearly the provisions of § 257b would be applicable.

The crucial question is whether § 257b is applicable and operative notwithstanding that consolidation was effected under the special act. Before 1865 a considerable body of statute law had developed and accumulated concerning the powers and duties of towns pertaining to schools, including the power to establish and maintain them, the election of a board of school visitors and prescribing its duties, the care and management by the selectmen of property appertaining to schools belonging to the town, and providing that each town shall annually raise by taxation "such a sum of money as they may deem advisable," to be distributed to the several school districts within each town, under the direction of the selectmen and school visitors. General Statutes, 1866, Chap. 3 (3), p. 335. The powers and duties of school districts and their officers were provided for in similar detail in (4), p. 338. In 1865 an act was passed, Chapter 62 of the Public Acts of 1865, providing, in § 1, as follows: "A town may at any time consolidate all the school districts therein in one district, to be known as the school district of [name of town] and shall thereupon forthwith take possession of all school houses, land, apparatus, and other property owned and used for school purposes, which such districts might lawfully sell and convey; *provided however,* that no such consolidation shall take effect until a majority of the school districts in the town shall, by majority vote, in lawful meeting duly warned, approve thereof. The property so taken

shall be appraised under the direction of the town, and, at the next annual assessment thereafter, a tax shall be levied upon the whole town, equal to the amount of said appraisal; and there shall be remitted to the taxpayers of each district the said appraised value of its property thus taken; or, the difference in the value of the property of the several districts may be adjusted in any other manner agreed upon by the parties in interest." This appears as § 61 of Chapter 3 (3) of the General Statutes of 1866, p. 337, and with minor amendments adopted in the meantime it is contained in Chapter 6 of Title 11 of the General Statutes of 1875, p. 139. The provision in the section above quoted for the taking over by the town of all the property of the districts appears as § 5 of that Chapter, with certain changes worked by amendment by § 4 of Chapter 87 of the Public Acts of 1867, the principal of which is a more specific provision that the town shall not only assume the property of the districts but be responsible for their debts. The same provisions have since been continued in substance. General Statutes, 1888, § 2198; General Statutes, 1902, § 2219; General Statutes, 1918, §§ 962, 963; General Statutes, 1930, § 962; Cum. Sup. 1933, § 257b.

Therefore it appears that the provision for adjustment, in the manner prescribed, of differences in the value of property of the respective districts concerned, now § 257b, has been for many years an integral and essential feature of the division of our school laws dealing with consolidation of school districts and transfer of their property to and control of the schools therein by the town. The reason and purpose thereof are readily made apparent. In *Second School District* v. *Glastonbury,* 86 Conn. 590, 594, 86 Atl. 577, it was said of this provision (then contained in § 7 of Chapter 146 of the Public Acts of 1909, p. 1072), "This tax does

not purport to be laid for the purpose of paying the
indebtedness which the town assumes to pay for
the different districts. The sum to be raised is not the
amount of such indebtedness, but the value of the
property received less the amount of such indebted-
ness. . . . The purpose of the tax is, as its name im-
plies, equalization, to equalize as between the different
districts, in proportion to their grand lists, the amount
in property and taxes taken from each by the town."
In *Rawson* v. *Spencer,* 113 Mass. 40, it was said, in sus-
taining, against objections on constitutional grounds, a
statute similar in principle and purpose (p. 45), "In
justice to those taxpayers in districts where the prop-
erty transferred exceeds the debts, allowances are
made intended to equalize as to such taxpayers the
common burden." In *Tefft* v. *Lewis,* 27 R. I. 9, 60
Atl. 243, it was said of a statute quite similar to ours
as to the adjustment feature (p. 15), "The tax which
is to be levied under said act is not a tax for revenue,
as it is all to be remitted to the taxpayers under the
provisions of said act, but its sole purpose is to equal-
ize the burdens of the new school system upon all the
taxpayers of the town. And as it is matter of common
knowledge that some school districts are possessed of
property which is much more valuable than that pos-
sessed by others, some such scheme as the one devised
by the General Assembly in said act is necessary in
order to do justice as between the taxpayers in such
school districts. . . . The town is to own—indeed,
does now own—all of the school property which was
heretofore owned by all of the school districts within
its borders. And it is only fair to all concerned so to
adjust the rights growing out of the previous owner-
ship of such school property by the respective districts
as to compel those taxpayers who have not already
contributed an amount equal to their share of the

present total value of all school property in the town to do so, and also to remit to those who have already paid more than their share of said total value, the over-plus heretofore paid by them." See also *Council of Town of Cranston, Petitioner,* 18 R. I. 417, 420, 28 Atl. 608; 56 C. J. 277.

The defendant town and city and the two school districts in behalf of which it is claimed that the adjustment statute is not applicable, as we understand them, do not deny the reason and justice of the principle involved in the statutes, but argue that the purposes thereof have been so far served by the so-called equalization measures which have been in effect in Hartford, that justice is served thereby and that it is to be inferred, from the omission of the special act to provide specifically for an adjustment such as that provided by the statute, that no such adjustment was intended. The salient facts concerning these equalization acts as stipulated on the record are: From 1905 until 1914, pursuant to a special act (14 Special Laws [1905] 685), the board of finance of the city of Hartford apportioned among the various school districts, in accordance with the needs of each district, a sum raised by levy upon the city's grand list not in excess of one-half of the amount raised by the tax of one mill on the city's grand list laid in accordance with § 2271 of the General Statutes of 1902, but no part of that amount was apportioned to a district whose own tax was less than five mills. In 1911, pursuant to a special act (16 Special Laws [1911] 53) at the annual meeting of the town and city, two resolutions which had been presented to the General Assembly at its 1911 session, (1) substitute for Senate Joint Resolution No. 30, providing for the consolidation of all school districts within the city, and (2) substitute for Senate Joint Resolution No. 168, providing for the annual

levy by the city of a tax of five mills on the grand list and distribution of the proceeds among the several school districts of the city according to the number of pupils registered in each district, were presented to the voters to determine their choice as between the resolutions as applicable to the school districts and the city. Those electors who favored Resolution No. 30 cast ballots bearing the word "Consolidation" and those favoring Resolution No. 168 ballots bearing the word "Equalization." The vote resulted "Consolidation" 3,554, "Equalization" 4,336, but the act under which the vote was taken provided that unless at least 50 per cent. of the registered voters cast their ballots on the question the result should not be regarded as a final expression, and 50 per cent. of the registered voters did not vote thereon. The same question was presented and voted upon in like manner at the annual meeting on April 2d, 1912, and the vote resulted "Consolidation" 4,970 and "Equalization" 5,277. The total number of registered voters at the time was 18,541, and as more than 50 per cent. voted on the question the result was regarded as a final expression and the General Assembly, in the following year, passed an act (16 Special Laws [1913] 703), substantially the same as Resolution No. 168, with an added section (6) providing for the time and method of future votes on the question of consolidation of school districts.

In each year from 1914 to 1934, pursuant to that act, the board of finance recommended to the court of common council the levy of a tax of approximately four and three-quarters mills upon the city's grand list and the appropriation of the proceeds thereof for the purpose of school maintenance in the various districts. The court of common council levied the tax and the proceeds were distributed among all the school districts in such proportion as the total number of pupils reg-

istered in each district during the fall term immediately preceding bore to the total number of pupils registered in all the districts. Each district annually reported its estimated current expenses for the following year and the number of pupils registered. The current expenses so reported did not include expenses for permanent improvements, payments of principal on bonds or notes, or payments to sinking fund, but did include interest on bonds and notes and expenses for repairs. The board of finance, after holding hearings on and revising the estimates, then recommended the levy of a tax the proceeds of which, when so distributed among the districts, together with the proceeds of the state enumeration grant, the state corporation stock tax, and the town deposit fund to which each of the districts was entitled, would give to the school district with the lowest per pupil cost of current expenses approximately the amount of those expenses as estimated by the board of finance. The tax was then levied and the proceeds distributed as aforesaid.

It clearly appears from the foregoing facts that neither the purpose of the act nor the effect of operations under it was to do more than measurably equalize the expenditures of the several districts for current expenses only, and that it in no material way tended to equalize capital expenditures or to compensate as between differing values of the properties owned by each district. The plain intention was to provide for a city tax to raise sufficient money so that the district having the lowest per pupil current expenses would receive an amount which, when added to other outside sources of income, would approximately cover its current expenses. Every district, notwithstanding, had to levy a district tax to cover capital outlays and every district but one had to cover a part

of its current expenses by a district levy. The Hartford equalization acts were not dissimilar in principle from statutory provisions which, in varying form, have been in effect since 1869. (Public Acts, 1869, Chap. 71, p. 294, § 1.) These were §§ 2269, 2271, General Statutes, 1902; §§ 1042, 1044, General Statutes, 1918; and are now § 1020, General Statutes, 1930, and § 304b, Cumulative Supplement, under which, in each town in which the school districts are not consolidated, the school visitors and selectmen, as a joint board, are required to annually fix the several amounts which in its judgment will be sufficient to pay the wages of teachers and incidental expense of maintaining the schools in the various districts during the current year, and the town periodically pays each district a sum sufficient to pay the expenses of the district for the wages of teachers and for fuel and incidental expenses if they do not exceed the amount fixed as above stated. If these expenses exceed that amount and the board decides that such additional expense was not necessary, the district is required to pay it unless the town shall otherwise order.

It is not without significance that these provisions and those for property adjustments upon consolidation have been so long concurrently maintained as part of our statute law. We can see no more repugnancy between the Hartford equalization tax and the adjustment statute than between these established features of the general law. If, as the defendants claim, by reason of incidental capital benefits received by districts through payments by the city for repairs, interest on bonds and notes, and the like, or otherwise, any considerable element of injustice would be involved in adjustment strictly on the tax basis prescribed by the statute, these considerations could be taken into account through adjustment in another

manner agreed upon by the parties, for which alternative the statute provides. Also, argument based on these considerations would be more appropriate if addressed to the General Assembly in support of an express exemption from operation of the general rule of adjustment than upon this question of construction of legislative acts, and we do not find in the stipulated facts any substantial support for a claim that because of effects of the operation of the Special Acts of 1905 and 1913 upon the burden of current expenses among the districts there should be an entire exemption from adjustment of property values between them.

As there is, in the Special Act of 1929, no express exemption of Hartford from the provisions of the General Statutes pertaining to consolidation of school districts and no enactment covering or serving as a substitute for § 257b, Cumulative Supplement, or, pro tanto, repealing it, support for the nonapplication of it must be derived, if at all, from implication. Implied repeal of a general law by a subsequent private act is not favored, will not be assumed, and will not be held to take place unless there is such manifest repugnancy between the two that they cannot be reconciled and operate concurrently. 59 C. J. 936; *Skelly* v. *Montville Street Ry. Co.*, 67 Conn. 261, 265, 34 Atl. 1040; *O'Flaherty* v. *Bridgeport,* 64 Conn. 159, 162, 29 Atl. 466. If the later act is silent as to repeal it will not be held to abrogate any prior law which can reasonably and justly operate without antagonism to it, and with reference to established systems and policies it is presumed that there is no intention to affect them any further than the plain terms of the later act require. Lewis' Sutherland, Statutory Construction, Vol. 1, pp. 511, 512, Vol. 2, p. 909.

The only provision in the Special Act of 1929 which

relates to the property of the districts is that on the first day of July following its acceptance the property and assets of the school districts shall pass to and be vested in the city and it shall assume their indebtedness. The remainder of the act is devoted to certain details of school administration, by the board of education of the city. In all other respects the act leaves untouched the ground covered by the General Statutes concerning consolidation and its consequences which are calculated to create and enforce throughout the state a settled system and policy. Manifestly the special act does not, and could not have been intended to, provide a complete plan and program for consolidation and for administration under it. The record indicates that even the time and manner of the votes on the question had to be determined by recourse to the appropriate general statutory directions, and various other statutory provisions of necessary or probable utility (for example, § 258b, Cum. Sup., concerning sale of school property formerly belonging to a district) have no counterpart or substitute in the special act. Indeed it may be justly said, we think, that no plan of consolidation could be regarded as complete which failed to provide, either itself or through operation of the general law, for a fair adjustment of property values, as contemplated by our long-established policy, unless answered in some other way. In our opinion, the provision in § 6 of the Special Act of 1913, that if consolidation be thereafter voted it "shall be established under a certain plan fully described and set forth in" Senate Joint Resolution No. 30, above referred to, which was never adopted by the General Assembly, and the passage of the Special Act of 1929, which was similar to it in general scope, are insufficient to establish an intent, either express or implied, that statutory provisions not repugnant to those of the

special act should be excluded from operation in Hartford. There is no repugnancy between the special act and § 257b; they may stand and operate together, and we can find no sufficient basis for holding that the latter is excluded by the former, or any other legal obstacle to its application. We hold, therefore, that it is applicable.

Our answer to questions one, two, four, six and seven, is "yes," and this renders answers to questions three and five unnecessary.

No costs will be taxed in this court.

In this opinion HAINES, BANKS and AVERY, Js., concurred.

(MALTBIE, C. J., dissenting). It is unfortunate that the persons responsible for the drafting of the special act concerning the consolidation of schools in Hartford did not proceed with more care and a greater appreciation of the need fully to express the intent of the law. As the act stands, it is difficult to determine what is its intention. However, I am not able to accept the interpretation placed upon it in the majority opinion with reference to the implied inclusion of the provisions of the General Statutes concerning the imposition of an adjustment tax. Those provisions do not constitute a separate statute, generally applicable whenever school consolidation may be voted by any town, but are an integral part of the plan of consolidation set up in the General Statutes. The question, then, is, Was the special act intended to embody a method of consolidation complete in itself, in substitution for that contained in the General Statutes? *State* v. *Maioffes*, 118 Conn. 199, 201, 171 Atl. 625. I think it was. Had it been intended merely to adapt the plan in the General Statutes to Hartford, there

would have been no necessity of any provision in the act expressly consolidating the schools or of one providing that the districts should cease to have any powers except those proper for the settlement of their affairs; indeed there would have been no need for a specific provision for a vote upon the question of consolidation, for the General Statutes are adequate in their provisions covering that matter; and an amendment to the charter to adapt it to consolidation furnishes no occasion for a referendum. The terms of the special act contain essential provisions which are beyond question inserted in substitution for similar provisions in the General Statutes, and I can see no warrant for holding that the intent to substitute the plan embodied in the act for that in the General Statutes stopped with them. Moreover, I am impressed with the history of this legislation. The special act states a method of consolidation in substitution for one which was part of a special law passed in 1911, submitting to the voters of Hartford alternative plans, one to equalize among the districts the tax to be levied for current expenses, and the other for a consolidation of districts, neither of which became effective. 16 Special Laws, p. 609 et seq. At the next session of the Legislature the plan for equalizing the taxes for current expenses among the districts was made a part of the charter of the city without any provision for a vote upon its acceptance; the act making this change was to remain in force until the school districts should be consolidated; and it was expressly provided that if consolidation should be voted in Hartford "said consolidation should be established under a plan fully described and set forth" in the Act of 1911. 16 Special Laws, p. 704. It would be hard to find a clearer expression of a legislative understanding that the Special Act of 1911 embodied a plan for consolidation com-

plcte in itself. The act before us is in all essential particulars like the Act of 1911, except that it places control of the schools after consolidation in the board of education of the city, as constituted under its present charter, instead of in a board of education to be constituted under the terms of the act. In view of the provisions of the Special Act of 1929 and its history, it seems to me to evince an intent that the plan embodied in it should be complete in itself and to preclude a resort to the provisions of the General Statutes concerning the imposition of an adjustment tax after the consolidation of the districts.